[Alexander et al. v. Caldwell et al.]

# Alexander *et al. v.* Caldwell *et al.*

*Bill in Equity for Reformation and Foreclosure of Mortgage.*

1. *When mortgagee is purchaser for a valuable consideration.*—When a mortgage is given to secure the payment of a pre-existing debt, the mortgagee cannot claim protection against older equities as a *bona fide* purchaser for a valuable consideration.

2. *Declarations of grantor; when admissible against grantee.*—The declarations or admissions of the grantor, in disparagement of his own title, are competent evidence against a subsequent grantee, but not against a prior grantee.

3. *Reformation of written contracts in equity.*—When, by mistake, a written contract fails to express any material term of the actual agreement which the parties intended to make, a court of equity will reform it, and make it express the true agreement ; but the mistake must be shown by clear and satisfactory proof ; and if it is uncertain in any material respect, the uncertainty is fatal to relief, although the court may see that great wrong has been done.

4. *Reformation of mortgage refused, notwithstanding mistake, on account of uncertainty of proof.*—Where a mortgage purported to convey eight hundred acres of land, part of a large plantation, but, by a misdescription of government numbers, conveyed three hundred and twenty acres to which the mortgagor had and claimed no title ; *held,* that a reformation was properly refused, although there was an evident mistake, because it was uncertain what lands were intended to be conveyed instead of those described by mistake.

APPEAL from the Chancery Court of Wilcox.

Heard before the Hon. CHARLES TURNER.

The bill in this case was filed on the 7th of January, 1872, by John D. Alexander, Fred. A. McNeill, John T. Hollis, and Alexander C. Davidson, against J. D. Caldwell, and J. H. George ; and sought, principally, to reform and foreclose a mortgage on a tract of land in said county, which said Caldwell had executed to Patrick, Irwin & Co., on the 5th November, 1860, and of which the complainants claimed to be the owners by assignment and transfer from said Patrick, Irwin & Co.; also, to annul and set aside, as fraudulent and void, another mortgage, and a quit-claim deed for a part of the same lands, which said Caldwell had executed to said John H. George, and to restrain the defendants from cutting timber, or otherwise committing waste on the lands. The mortgage to Patrick, Irwin & Co. was given to secure a promissory note for $14,080.80, dated the 2d July, 1860, and payable one day after date. It purported to convey eight hundred acres of land, which were described as lying in sections one, two, eleven, and twelve, in township eleven, and range ten; but, by mistake, as the bill alleged, in describing the lands by their government numbers and subdivisions,

three hundred and twenty acres were included, to which said Caldwell neither had nor claimed any title. This mortgage, which was duly acknowledged and recorded, contained no power of sale; and on the 5th November, 1868, by another instrument under seal, reciting as its consideration the desire to avoid the expense of a suit for foreclosure in equity, and indulgence granted to him by said Patrick, Irwin & Co., Caldwell authorized them, or their assigns, to foreclose by a sale. In this latter instrument, the mortgage is described as "conveying to them a plantation and tract of land lying in said county, near the town of Allenton, containing about eight hundred acres, more or less." On the 14th February, 1861, said Caldwell executed a mortgage to said J. H. George, to secure the payment of a promissory note for $6,556.41, borrowed money; the lands conveyed being three hundred and twenty acres in quantity, and erroneously described as they were in the mortgage to Patrick, Irwin & Co. On the 8th December, 1868, he executed another mortgage to George, reciting the mistake in the description of the land in the former mortgage, purporting to correct that mistake, and to provide full security for the payment of the note; and this mortgage conveyed six hundred and seventy acres of said plantation, and included one hundred and sixty acres of the lands conveyed by the mortgage to Patrick, Irwin & Co. On the 9th October, 1872, Caldwell conveyed these six hundred and seventy acres, described as in said second mortgage, by quit-claim deed, to said J. H. George, for the nominal consideration of ten dollars. The opinion of the court contains a diagram of the lands, from which the several portions, as described in the different instruments, will be better understood.

The bill alleged, that the mortgage to Patrick, Irwin & Co. was intended and understood by both parties to it to convey Caldwell's entire plantation, and that it failed to do so through the mistake of Caldwell, who furnished the numbers and description of the lands to the draughtsman; also, that the first mortgage to George was without consideration, and was intended to hinder, delay, and defraud the creditors of Caldwell; that the subsequent mortgage and quit-claim deed were executed with the same intent; and that George had notice of the mortgage to Patrick, Irwin & Co. The defendants filed separate answers. Caldwell denied that he ever promised or intended to convey his entire plantation to Patrick, Irwin & Co., or to convey to them any other lands than those described in their mortgage; and alleged that, at the instance and request of their attorneys, he consented to give them a mortgage, and, for that purpose, procured the numbers and

description of his lands from the books of the tax-assessor, which he gave to said attorneys, and they thereupon prepared the mortgage, including such lands as they deemed sufficient security, and he signed it, supposing that the lands were accurately described; and that the inclusion in the mortgage of other lands, to which he had no title, was a mistake on the part of said attorneys, which he could not explain, and in which he had no agency. George, in his answer, asserted the *bona fides* and validity of his mortgages, and denied all notice or knowledge of the alleged mistake in the mortgage to Patrick, Irwin & Co. Other matters were brought forward in the answers, which require no special notice. On final hearing, on pleadings and proof, the chancellor dismissed the bill, holding that the complainants had failed to make out a case for relief; and his decree is now assigned as error.

BROOKS, HARALSON & ROY, with COCHRAN & DAWSON, for appellants.—The general denial of a mistake by Caldwell is a mere evasion. His answer shows that the misdescription of the lands conveyed, as to which there can be no doubt, was considered by him as a mistake on the part of the attorneys only, for which he was not responsible. But the law will not permit him to shield himself behind such technical evasion and indirect denial. The evidence shows that he intended to convey his entire plantation, and he supposed that he had done so eight years afterwards, when he executed the power of sale, describing the lands therein as " a plantation and tract of land near Allenton." That the numbers and description of the lands in the mortgage, as furnished by him, correspond with the numbers and description in the first mortgage to George, is corroborative of the mistake as alleged. The mistake being shown, the principle is well settled, that a court of equity will reform and correct the deed; and the corrected deed will relate back and operate from the day of its date, except as against a *bona fide* purchaser for valuable consideration without notice.—*Stone v. Hale*, 17 Ala. 559; *Whitehead v. Brown*, 18 Ala. 682; *Pierce v. Brassfield*, 9 Ala. 573; 1 Story's Equity, §§ 153-5, 165; *Williams v. Hatch*, 38 Ala. 341. That George is not a purchaser for valuable consideration, within the meaning of this rule, see *Wells v. Morrow*, 38 Ala. 129; *Boyd v. Beck*, 29 Ala. 713, and authorities there cited.

S. J. CUMMING, JONES & JONES, and R. GAILLARD, *contra.*— Equity will grant relief against alleged mistakes in written instruments, only where there is a plain mistake, common to both parties, and established by clear and convincing evi-

dence. Here, the defendant positively denies any mistake on his part; and if the evidence tends to establish any mistake, it is not the mistake alleged in the bill. If the parties intended to include in the mortgage three hundred and twenty acres of land to which the mortgagor had title, instead of the three hundred acres to which he had no title, how is the court to determine which particular lands of the entire tract were to be thus included? The uncertainty of the proof on this point, and the variance between it and the allegations of the bill, are fatal to relief.—*Lockhart v. Cameron*, 29 Ala. 355; *Rumbly v. Stainton*, 24 Ala. 712; *Hair v. LaBrouse*, 10 Ala. 548; *Hogan v. Smith*, 16 Ala. 600; Willard's Equity, 75; 1 Story's Equity, § 157, and notes; *Burns v. Hamilton*, 33 Ala. 210. The bill alleges that the intention was to mortgage the whole plantation; but the answer explicitly denies this allegation, and there is no evidence whatever to support it. The general words of description contained in the power of sale, on which the appellants rely, are limited and controlled by the particular description contained in the mortgage.—1 Shep. Me. 430; 7 N. H. 241; 5 N. H. 536; 15 Pick. 428; 3 B. Mon. 594; 5 Mason, 410; 14 Pick. 128.

STONE, J.—The mortgage to George, on the lands in controversy, was executed December 5th, 1868. The debt it was made to secure had been long due. George does not, therefore, occupy the position of a purchaser, which, even if without notice, would give him a paramount right over older equities. In fact, there is no question of *bona fide* purchaser presented by this record.—See *Wells v. Morrow*, 38 Ala. 125.

On the 5th day of November, 1860, Caldwell made and executed a mortgage on lands to Patrick, Irwin & Co., to secure a large debt, also past due. We do not doubt the *bona fides* of either of the debts; that to Patrick, Irwin & Co., or that to George; although, according to the testimony, there must have entered into the latter a large amount of usurious interest. This, however, is not made a question in this cause. The bill charges that the mortgage and sale to George were intended to delay, hinder, and defraud the creditors of Caldwell. This is denied, and the charge is not sustained by the evidence, although some suspicious circumstances are shown. The real *gravamen* of the present bill lies in the averment, that there was a mistake in the mortgage to Patrick, Irwin & Co., in this, that it conveys to them three hundred and twenty acres of land not intended to be conveyed, and leaves out lands that were intended to be conveyed. It so happens that no person who partici-

[Alexander et al. v. Caldwell et al.]

pated in the preparation and execution of the mortgage, except Caldwell, the mortgagor, was living when the error or mistake in the mortgage was discovered. The prayer of the bill was for a reformation of the mortgage; and a sworn answer was required from the defendants, one of whom was Caldwell, the mortgagor. The answer and testimony of Caldwell deny that he made any mistake in the mortgage, or that he intended to mortgage any lands other than those expressed in the mortgage.

2. Before entering on the discussion of the testimony, we feel it to be our duty to say, that what is alleged to have been said by Caldwell at the sale under the Patrick, Irwin & Co. mortgage, December 14th, 1868, testified to by the witnesses Davidson, Alexander, and McNeill, occurred after the amended mortgage was made to George—December 5th, 1868; and such declarations, although provable against Caldwell, are not evidence against George. The declarations, proved by McNeill and Wolfe to have been made by Caldwell on the 24th September, 1868, rest on a different principle. Caldwell then held the title to the land, and what he then said is competent evidence, and affects George, who afterwards acquired his title from him.—1 Brick. Dig. 834, § 433.

As we have said before, the only person who participated in the preparation and execution of the mortgage to Patrick, Irwin & Co., and who knew what lands were intended to be therein conveyed, who was living at the time the present litigation was commenced, is Caldwell, the mortgagor. Patrick, Irwin & Co. had no agency in the negotiation, and, hence, have no personal knowledge on the subject. They intrusted the claim to Beck & Thompson, attorneys, resident in the county with Caldwell, that they might obtain security for its payment. Negotiations between Beck & Thompson and Caldwell resulted in the draught by the former, and the execution by the latter, of the mortgage bearing date November 5th, 1860. Both Beck and Thompson died before the present controversy arose.

On the 5th November, 1860, Caldwell owned, near Allenton, Wilcox county, a plantation comprising about eleven hundred and forty acres, in one connected body. The lands lie in sections 1 and 2, and in the north halves of 11 and 12. His lands in sections 11 and 12 are the east half of northeast quarter of section 11, and the northwest quarter and west half of northeast quarter of section 12. He owned no lands in the south half of either of said last named sections. He owned the west half of section 1, less twenty acres in the northwest corner; and he owned all of section 2, except the north half of the northwest quarter, the northwest quarter

[Alexander et al. v. Caldwell et al. ]

of the northeast quarter, and twenty acres off the south part of the southwest quarter. We append a diagram of the lands. Those marked P. I. & Co. are the lands described in the mortgage of 5th November, 1860, to them. Those marked * are lands to which Caldwell claimed no title or interest. Those marked G. 1, are lands described in the mortgage to George, of February 14th, 1861. Those marked G. 2, are lands conveyed in the mortgage to George, of December 5th, 1868.

NORTH.

| | | | |
|---|---|---|---|
| | G. 2<br>40 | *<br>20 | |
| P. I. & Co.<br>80 | P. I. & Co.<br>80 | G. 2<br>140 | |
| **2** | | | **1** |
| P. I. & Co.<br>140 | P. I. & Co.<br>160 | G. 2<br>160 | |
| * P. I. & Co.<br>20 | | | |

| | | | |
|---|---|---|---|
| | G. 2<br>80 | G. 2<br>160 | G. 2<br>80 |
| **11** | | **12** | |
| | P. I. & Co<br>*<br>G. 1<br>80 | P., I. & Co.<br>*<br>G. 1<br>160 | P., I. & Co.<br>*<br>G. 1<br>80 |

It is thus shown that these three hundred and forty of the eight hundred acres conveyed by Caldwell to Patrick, Irwin & Co., and the entire three hundred and twenty acres conveyed to George on 14th February, 1861, were lands to which Caldwell had no claim whatever.

3. When parties to a contract fail, by mistake, to express any material term of the contract they have mutually agreed to make, chancery will reform the contract, and make it express what the contracting parties mutually intended. But the courts will not interfere, unless the mistake is shown by clear and satisfactory proof. If uncertain in any material respect, it will be held insufficient; and while the courts

may feel that great wrong has been done, they can grant no relief by reason of the uncertainty.—*Lockhart v. Cameron*, 29 Ala. 355 ; *Rumbly v. Stainton*, 24 Ala. 712 ; *Hair v. La Brouse*, 10 Ala. 548 ; *Hogan v. Smith*, 16 Ala. 600.

4. The bill in the present case prayed and obtained a discovery on oath from defendant Caldwell. He was also examined as a witness for himself and defendant George. It is not our intention to comment at length on his answer and testimony. Some features of them stand out saliently, and we feel it our duty to notice them. He shows clearly that it was not his intention to convey by mortgage, either to Patrick, Irwin & Co., or to George, any lands of which he was not the owner. We are convinced that, when he made the first two mortgages, his purposes were sincere. He conveyed, in November, 1860, to Patrick, Irwin & Co., three hundred and twenty acres of land in the south halves of sections 11 and 12, to which he neither then asserted, nor now asserts any claim. Three months later, he mortgaged these identical three hundred and twenty acres of land to George. He impliedly admits that he furnished to George the numbers, by which the latter was governed in drawing his mortgage. The first mortgage to George contains no other lands than these. The mortgage to Patrick, Irwin & Co. expresses the quantity conveyed at about eight hundred acres ; and the power of sale executed by Caldwell in September, 1868, to the then holders of the mortgage, calls for the like quantity of eight hundred acres. Of the lands described in this mortgage, Caldwell owned and claimed only some four hundred and sixty, or four hundred and seventy acres. He admits there was a mistake in the first mortgage to George, and that lands are inserted therein which he did not intend to insert ; but he does not state what lands he did intend to convey to him in the first mortgage. In the second, or what is called the corrected mortgage to George, there is embraced about double the quantity that is expressed in the original mortgage to him, and the lands are entirely different ; yet, notwithstanding the well-established facts, that Caldwell attempted to convey to Patrick, Irwin & Co. eight hundred acres of land owned by him, and did not intend to convey any lands not owned by him ; that he actually conveyed to them only four hundred and sixty, or four hundred and seventy acres of land, of which he was the owner,and, in the same instrument, conveyed to them three hundred and forty acres to which he asserted no claim ; that three months afterwards, in executing a mortgage to George, there was inserted in it, on information that must have been furnished by him, the identical three hundred and twenty

acres of land, to which he set up no claim, which had been expressed in the mortgage to Patrick, Irwin & Co., and that the insertion of these numbers in the mortgage to George was by mistake; still he denies, and reiterates the denial time and again, that he made any mistake in the execution of the mortgage to Patrick, Irwin & Co. He goes much further than this, and testifies as follows: "I did not intend to convey by mortgage to Patrick, Irwin & Co. any lands that I afterwards mortgaged to John H. George. * * The lands belonging to me, mentioned in the mortgage to Patrick, Irwin & Co., were the only lands that I intended to mortgage to Patrick, Irwin & Co., that belonged to me." The second mortgage to George conveyed to him all the lands Caldwell owned at either of the dates, except the four hundred and sixty or four hundred and seventy acres previously conveyed by him to Patrick, Irwin & Co. We suppose this seeming discrepancy is sought to be reconciled on the hypothesis, stated by him, that he furnished to Beck & Thompson the means of learning the numbers of his lands; that they inserted the numbers in the mortgage; that he, Caldwell, having confidence in them, executed the mortgage without hearing it read; and that if any mistake was made, it was the mistake of Beck & Thompson. This excuse is too narrow and technical. We are clearly convinced that Caldwell intended to convey about eight hundred acres of the plantation owned by him; that for about eight years he believed he had so conveyed that quantity of his own land, when, in truth and in fact, he had conveyed only four hundred and sixty or four hundred and seventy acres of such plantation. This, on this most favorable view for Caldwell and George, was a mistake by Caldwell in the execution of the mortgage, clearly shown by the proof.

A second question, equally important with the one above discussed, here presents itself: What lands did the contracting parties intend to convey, instead of those, not owned by Caldwell, which were inserted in the mortgage? The bill avers that the intention was to mortgage the whole plantation. The answers deny this. We have scrutinized the testimony closely, and we cannot find that this averment is clearly proved. On the contrary, we think the intention was to convey only eight hundred acres, or about that quantity. And of the six hundred and sixty acres then owned by Caldwell and not conveyed, what part was intended to be conveyed? The testimony entirely fails to inform us. Two clues are given in the record: First, the statement by Caldwell, when McNeill and Wolfe visited him, in September, 1868, that he had conveyed only eight hundred of the eleven

hundred acres, because his title to three hundred was not at the time perfected. Second, the lands then shown and pointed to, by Caldwell, in his interview with them, as being the lands conveyed in the mortgage. Taking these data as a starting point, it is possible the correct numbers could have been ascertained and identified. There is nothing in the record to enable us to do so; and the result is, this suit must fail on that account.

The decree of the chancellor is affirmed.


