# Berry, Demoville & Co. *v.* Sowell.

### *Bill in Equity for Reformation of Deed.*

1. *Reformation of written instruments in equity.*—When, through mistake or fraud, a written instrument fails to express a material term of the real contract which the parties mutually intended to make, a court of equity will reform it, on clear and satisfactory proof, so as to make it express the true contract; and this relief will be granted, not only between the immediate parties to the contract, but also against creditors and purchasers chargeable with notice of the mistake; but not against innocent third persons who have acquired vested rights, and who can not be placed *in statu quo.*

2. *Same.*—On the facts of this case,—a father having conveyed by deed a house and lot to his married daughter, reciting only love and affection as its consideration, and not using any words which would exclude the marital rights of her husband; and an attachment against the father being afterwards levied on the property—the deed was reformed, against the husband, the father, and the attaching creditor, on averment and proof that the husband bought the property, paid a part of the price with moneys belonging to his wife, and conveyed it to her father, under a verbal agreement between the three that it should be conveyed to the wife as an equitable separate estate; and that it was not so conveyed through mistake on the part of the draughtsman.

3. *Same; voluntary conveyance; parol evidence as to consideration.* A voluntary conveyance is void as to the existing creditors of the grantor, and parol evidence is not admissible, at law, to contradict its recitals as to the consideration. Hence, the grantee, claiming that the deed was founded in fact on valuable consideration, would be without legal remedy against an attaching creditor of the grantor, and the levy of the attachment would be no obstacle to a reformation of the deed in equity.

4. *Same; who is bona fide purchaser; right of creditor to pursue moneys of debtor.*—The attaching creditor in such case, seeking to recover an antecedent debt due from the grantor, can not claim protection as a *bona fide* purchaser, against the equity of the grantee to have the deed reformed; nor can he claim that the deed is partly voluntary (and to that extent fraudulent and void as to him), because the grantor, his debtor, paid a balance of purchase-money due to the original vendor of the land, when it appears that he was bound on the note as surety for the purchaser, the husband of the grantee; nor can he assert any rights against the land, by subrogation or otherwise, on account of the moneys thus paid by his debtor.

Appeal from the Chancery Court of Limestone.

Heard before the Hon. Thomas Cobbs.

The bill in this case was filed on the 26th April, 1876, by Mrs. Julia C. Sowell, a married woman, suing by her next

[Berry, Demoville & Co. v. Sowell.]

friend, against Benjamin M. Sowell (her husband), Preston Cap-shaw (her father), and the partners composing the mercantile firm of Berry, Demoville & Co., a firm doing business in Nash-ville, Tennessee; and sought the reformation of a deed to a house and lot in the town of Athens, so as to make it show that it was not a voluntary conveyance (as on its face it purported to be), and to create in the complainant an equitable separate estate; and also an injunction against attachments which had been levied on the house and lot, as the property of said Cap-shaw, at the suit of Berry, Demoville & Co., as creditors of said Capshaw. The deed sought to be reformed, dated Decem-ber 19, 1873, was executed by said Preston Capshaw, and con-veyed the said house and lot to the complainant, on the recited consideration of natural love and affection for her. The said house and lot formerly belonged to one B. M. Townsend, and was sold and conveyed by him, by deed dated March 16th, 1870, to said B. M. Sowell, the complainant's husband. The consid-eration of this sale and conveyance was $2,000, one half of which was paid in cash by said B. M. Sowell; and he gave his note for the residue, payable twelve months after date, with said Capshaw and another as his sureties. On May 22d, 1871, B. M. Sowell conveyed said house and lot to said Capshaw, on the recited consideration of $2,000, by deed with covenants of warranty; and Capshaw conveyed it to the complainant, by deed dated December 19, 1873, the reformation of which was sought by the bill. When Sowell's note for the purchase-money remaining unpaid, $1,000, fell due, or soon afterwards, it was paid or taken up by Capshaw, his surety, who paid $600 in cash, and gave his own note for the residue, $400; and he paid this note afterwards. In explanation of these transac-tions, and as grounds for a reformation of Capshaw's deed to the complainant as prayed, the bill alleged that, about the time when Sowell's note for $1,000 became due, on which Capshaw was bound as his surety, the complainant's husband and father desired to have the property settled on her as an equitable sep-arate estate, and to accomplish this object, by agreement be-tween them and the complainant, she and her husband conveyed another lot in Athens to said Capshaw, in consideration of the payment by him of the amount due on the note to Townsend, and Sowell also conveyed to him the said house and lot involved in this suit, on his agreement to convey the property last men-tioned to the complainant, by words which might create in her an equitable separate estate; and that by a common mistake on the part of the parties themselves, and through the ignorance or mistake of the draughtsman, the deed afterwards executed to her failed to express this intention and agreement. The attachment of Berry, Demoville & Co. was levied on the land

[Berry, Demoville & Co. v. Sowell.]

on the 14th April, 1874, and was founded on a debt created in 1873, by a partnership of which Capshaw was a member; and the complainant alleged. "that said property was, at the time and long before the creation of said alleged debt, her separate property, and was in her actual possession, openly held and claimed by her, and purchased and paid for by means of her own and her husband's."

Capshaw and B. M. Sowell admitted the allegations of the bill, and made no defense. Berry, Demoville & Co. demurred to the bill for want of equity, assigning several specific grounds of demurrer; denied the alleged agreement and mistake, and required strict proof thereof; denied that they had any notice, actual or constructive, of said mistake and agreement, and claimed to be entitled to protection against it as *bona fide* purchasers without notice; and insisted that Capshaw's deed to the complainant, at least to the amount of the purchase-money paid by him to Townsend, was voluntary, fraudulent, and void as against them. The chancellor overruled the demurrer to the bill, and, on final hearing, on pleadings and proof, rendered a decree for the complainant. The overruling of the demurrer, and the final decree, are now assigned as error.

McClellan & McClellan, for appellants.—(1.) The legal title to the house and lot was vested in Capshaw by Sowell's deed to him, and that deed was duly executed and recorded. Capshaw's deed to Mrs. Sowell is a voluntary conveyance on its face, and is, therefore, fraudulent and void as against his existing creditors.—*Foote v. Cobb*, 18 Ala. 585; *Thomas v. DeGraffenreid*, 17 Ala. 602, and cases cited in 2d Brick. Digest, 21, § 100. (2.) Whether the purchase-money to Townsend was paid by Sowell or Capshaw, or partly by each, is immaterial; the complainant being, in either case, a mere volunteer, or gratuitous donee.—1 Story's Equity, §§ 706–7, 789–94; and cases collected in 1st Brick. Digest, 694, § 790. (3.) To authorize the reformation of a written instrument, on the ground of mistake, the proof must be certain, clear, conclusive, and satisfactory beyond a reasonable doubt.—*Campbell v. Hatchett*, 55 Ala. 548; *Clark v. Hart*, 57 Ala. 390; *Hubbard v. Allen*, 59 Ala. 283; *Lockhart v. Cameron*, 29 Ala. 355; *Rumbly v. Stainton*, 24 Ala. 712. The evidence here utterly fails to establish the mistake or mistakes, as alleged, and the admitted facts clearly negative any mistake. Sowell was the draughtsman of the deed, and he was a licensed attorney. That he should have conveyed the property to Capshaw, instead of conveying it directly to his wife, if he desired to create an equitable estate in her, was a very singular procedure, which ought to have been explained; and his acceptance of a deed from Capshaw, which,

instead of stating the facts now set up, simply recites love and
affection as its consideration, ought to have been explained, if
at all susceptible of explanation. Add to this the averment of
the bill, that the complainant knew nothing of these matters
until within "about two months before the commencement of
this suit" (from which it is a fair inference, that neither of
these deeds was ever delivered to her), and belief in an honest
mistake or mistakes, as alleged, requires great credulity. (4.)
But all these transactions, when considered in connection with
the insolvency of said Capshaw, his efforts to defeat the claims
of his creditors by collecting his available assets, disposing of
his property, and leaving the country, and the levy of an attach-
ment on this property, are easily understood, and show an at-
tempt to defraud creditors, which a court of equity will not
countenance.—*Patton v. Beecher*, 62 Ala. 580–94; *May v.
May*, 33 Ala. 203; *Brantley v. West*, 27 Ala. 542.

WALKER & SHELBY, *contra*, cited Story's Equity, vol. 1,
§§ 136, 138, 156, 165, 166; *Larkins v. Biddle*, 21 Ala. 252;
*Sawyer v. Harvey*, 3 Ala. 331; *Alexander v. Caldwell*, 55 Ala.
517; *Stone v. Hale*, 17 Ala. 564; *Whitehead v. Brown*, 18 Ala.
682; *Baskins v. Calhoun*, 45 Ala. 582.

SOMERVILLE, J.—It is a settled principle of equity juris-
prudence, that where, by mistake, or fraud, a deed or other
written contract fails to express any material term of the real
agreement which the parties mutually intended to make, a court
of equity will, on clear and satisfactory proof of such mistake
or fraud, *reform the instrument*, so as to make it conform to
the intention of the parties, and embody the actual or true
agreement.—*Alexander v. Caldwell*, 55 Ala. 517; *Campbell v.
Hatchett, Ib.* 548. The aim of the court, in such cases, is to
place the parties, as nearly as possible, in the situation they
would have occupied but for the mistake.—Waterman on Spe-
cific Performance, §§ 368, 369.

And this jurisdiction to reform or rectify written instruments
may be exercised as well against creditors, and purchasers hav-
ing actual or constructive notice of the mistake, as between the
immediate parties themselves.—*Dozier v. Mitchell*, 65 Ala. 511;
*Baskins v. Calhoun*, 45 Ala. 582; *Williams v. Hatch*, 38 Ala.
338; 1 Story's Eq. Jur. §§ 165, 166. If, however, the parties
can not be placed *in statu quo*, or if the mistake can not be
rectified without impairing the vested rights of innocent third
parties, having no notice of the mistake, the aid of equity will
be withheld.—Waterman on Spec. Perf. § 384.

The present bill is filed to reform a deed to certain real estate,
executed by the defendant, Capshaw, to the complainant, Mrs.

2

Sowell, and dated December 19, 1873.  Ancillary to this, an injunction is prayed against a writ of attachment levied upon the land by the appellants, Berry, Demoville & Co.  No difficulty is presented as between the immediate parties to the deed. The bill alleges an agreement between Benjamin Sowell, complainant's husband, who is made one of the defendants to the bill, and his wife, the complainant, on the one part, and the defendant, Capshaw, on the other, that the husband should convey the property in controversy to Capshaw, in order that he might re-convey to the wife, in such manner, and with such apt words, as to constitute the property her separate estate by contract.  Capshaw, who thus constituted himself a mere trustee, made this re-conveyance; but, by omission, ignorance, or mistake of the draughtsman, the consideration of the deed was recited to be mere *love and affection*, instead of a valuable one moving from the grantee and her husband, and the *apt words* necessary to describe or create the *separate equitable estate* were omitted.  The parties are thus alleged to have executed an instrument, by common mistake, different from the one agreed on, and prejudicial to the rights of the complainant.  These facts are admitted in the answers of both Capshaw, the grantor in the deed, and of Benjamin Sowell, the husband, who acted for his wife; and are, in our opinion, sustained by the evidence. The case is clearly one in which the equity of rectification, which is strictly in the nature of specific performance, can be invoked, unless there be some other ground of valid objection.

The remedy of Mrs. Sowell, in a court of law, was totally inadequate.  The deed on its face purported to be a mere voluntary conveyance, which would be void as to the attaching creditors, whose debts existed at the time of its execution.  It was incapable of being established by parol proof of a valuable consideration in a court of law, such evidence being inadmissible as tending to vary the legal effect of the instrument.  The only remedy, in such cases, is a bill in equity filed with the view of its reformation.—Kerr on Fraud & Mis. 191–2; *Hubbard v. Allen*, 59 Ala. 283.

The levy of the attachment was no obstacle to the reformation of the deed conveying the attached property to the complainant.  The equity of Mrs. Sowell, arising from the purchase of the house and lot in question with her money, was superior to the lien acquired by the levy of the attachment, whether the attaching creditors had notice of such equity or not.  The attachment could only reach the *actual interest of the defendant* in attachment, whatever that might be, and is no impediment to the assertion of all equities previously existing as incumbrances on the property.—Drake on Attachments, § 223; Freeman on Judg. §§ 356–7.  Nor can an attaching

creditor claim protection as a *bona fide* purchaser, as he seeks to recover an old debt, and parts with no present consideration. *Depeyster v. Gould*, 29 Amer. Dec. 723; *Rogers v. Adams*, 66 Ala. 600. The same rule was applicable, in this State, to the liens of judgment creditors, until it was expressly abrogated by statute.—*Coster v. Bank of Georgia*, 24 Ala. 37; *Preston & Stetson v. McMillan*, 58 Ala. 84; Code of 1876, §§ 2199, 2200; Freeman on Judg. §§ 356–7.

The evidence shows that the complainant was in possession of the premises, and that the deed from Capshaw to her, here sought to be reformed, was executed and recorded before the levy of the attachment sued out by appellants. The original vendors, Townsend and wife, conveyed to Benjamin Sowell, in March, 1870, for a consideration of two thousand dollars. Of this sum, one thousand dollars was paid in cash; and the note of Sowell was given for the balance, upon which *Capshaw became one of the sureties.* Capshaw afterwards became indebted to Sowell, in the sum of about six hundred dollars, for a lot of land in the town of Athens, which he paid upon the debt to Townsend; and he also paid out of his own funds the balance of the purchase-money, amounting to about *four hundred dollars.* It is insisted that this was a donation to the complainant, his daughter, to whom he conveyed the house and lot, as above stated, in December, 1873, and that the conveyance was, therefore, fraudulent. If the premise be true, the conclusion would follow, at least so far as to render the deed constructively fraudulent, and the grantee would be constituted a trustee *in invitum* to the extent of the gift; such being the principle governing voluntary conveyances.—Bump on Fr. Conv. 303. But we are not at liberty to regard the transaction in this light. The four hundred dollars in question was paid by Capshaw, pursuant to a previous obligation entered into as *surety for Benjamin Sowell.* It was not, therefore, a gift to the complainant, but money paid by request for the use of the principal, Sowell, against whom an action of *assumpsit* would lie at the instance of Capshaw. So, a garnishment might lie against him, as the debtor of Capshaw, in favor of the appellants. These conclusions are utterly in conflict with the theory of a gift to complainant.

The fact that the money, paid by the surety for the principal, was invested by the latter in the lands purchased for complainant, confers no right upon the appellants, as creditors, to pursue the fund into the investment. Such investment, standing alone, raises no equity in favor of the creditors of the surety, either by subrogation or otherwise. Such, at least, is the doctrine of this court as established by its past decisions. *Foster v. Trustees of Athenæum*, 3 Ala. 302; *Knighton v. Curry*, 62 Ala. 404.

[Whorley v. Memphis & Charleston Railroad Co.]

The decree of the chancellor must, under these principles, be affirmed.