# Consumers Coal & Fuel Co. *v.* Yarbrough.

## *Bill to Enjoin Foreclosure, and for Reformation.*

(Decided October 21, 1915.   69 South. 897.)

1. *Cancellation of Instrument; Mining Lease; Fraudulent Representation; Bill.*—The bill and prayer considered in connection with the answer and demurrers, and it is held that the bill was defective as a bill for rescission, since it failed to offer restitution of the property or to show sufficient reason for such failure.

2. *Reformation of Instrument; Bill; Sufficiency.*—The bill considered and held good as seeking an abatement of the purchase price on account of the misrepresentations of respondent as to the quality of the coal to conform to the true value of the lease, which was based upon actual quality.

3. *Same; Promise to Extend; Foreclosure.*—The bill examined and held to lie to reform the note and mortgage to conform with respondent's promise to extend the same, and to enjoin a premature foreclosure.

4. *Sales; Chattels; Warranty.*—In the ordinary sale of chattels the law implies a warranty of title though none be expressed in the contract, and whether the contract is oral or written.

5. *Reformation of Instruments; Notes and Mortgages; Maturity.*—Equity will reform a written instrument which by fraud or mistake is not drawn according to the intention of the parties so as to make it conform as to dates of maturity according to the agreement between the parties.

6. *Contracts; Rescission; Restoration.*—If practicable, the complainant must, as a condition precedent to the exercise of the right to rescind a contract, restore or offer to restore to the other party what he has received from him by virtue of the contract.

7. *Same; Restitution Impossible; Effect.*—Where it has become impossible for the complainant party to make restitution because of the misconduct or default of the other party to the contract, the restoration of what he has received by virtue of the contract is not a condition precedent to his exercise of the right of rescission.

8. *Cancellation of Instruments; Legal Remedy; Effect.*—A bill to cancel and rescind a contract of sale is not rendered objectionable because the buyer might sue at law for a breach of warranty or for deceit.

9. *Sales; Abatement of Price.*—If a purchaser has a right to rescind and elects not to do so he may claim an abatement of the purchase money while retaining the property.

10. *Same; Actual Value.*—If one purchases property of any value whatever, although not adapted to the particular use intended, he

cannot avoid entirely the penalty of the purchase money, and can have abatement only as to the actual value of the property.

11. *Injunction; Temporary; Dissolution; Sworn Answer.*—Notwithstanding a bill shows cause for injunctive relief, the temporary injunction issued thereon is properly dissolved if the sworn answer denies all the averments whereon any right to relief can be based.

12. *Same; Admissions and Sworn Answers; Effect.*—To a bill seeking the reformation of a contract to purchase a mining lease, a sworn answer which admits that defendant made representations as to the quality of the coal upon which plaintiff relied in purchasing the lease, but which respondent asserts to have been the expression of opinion only, the temporary injunction issued upon the averments of the bill should be continued to a hearing on the merits.

APPEAL from Walker Law and Equity Court.

Heard before Hon. T. L. SOWELL.

Bill by the Consumers Coal & Fuel Company against H. F. Yarbrough, to restrain the foreclosure of a mortgage, and for cancellation or reformation of a contract to purchase a mining lease. From a decree dissolving the temporary injunction issued thereon, complainant appeals. Reversed and remanded.

BANKHEAD & BANKHEAD, for appellant.

LONDON & FITTS, and DAVIS & FITE, for appellee.

THOMAS, J.—The decree of the court from which the appeal is taken dissolved the temporary injunction "for want of equity in the bill and upon the sworn denials contained in the answer." Pending the appeal the appellant prayed for and secured a reinstatement of the injunction. The demurrer incorporated in the answer challenged the equity of the bill. The assignments of error present for review the finding of the court that "there was no equity in the bill" and the decree dissolved the temporary injunction.

(1-3) The bill shows that the Cahaba Coal Company owned the coal in the lands, the subject of this suit, and executed a lease thereon to H. F. Yarbrough, appellee;

that he transferred the lease to Yarbrough Coal Company, a corporation and later this company retransferred it to appellee. Before the retransfer of said lease by the Yarbrough Coal Company to appellee, the appellant, Consumers' Coal & Fuel Company, with the said Yarbrough contracted for the sale of said lease. This contract, made a part of the bill, provided that H. F. Yarbrough would furnish to the appellant "the written consent of the owners of the property described in the lease to the assignment and transfer of said lease to party of second part [the Consumers' Coal & Fuel Company]," and that he would "cause the Yarbrough Coal Company to relinquish to him all the right, title, and interest in and to said lease, and * * * satisfy or cause to be satisfied all outstanding liens, claims, or mortgages of whatever description that may exist against the said leasehold interest." Appellant paid therefor the sum of $500 in cash and executed 13 notes, of $500 each, bearing 8 per cent interest from date of sale, and payable from 1 to 13 months after date, respectively, and secured by a mortgage on the leasehold interest assigned to appellant.

Prior to the execution of the lease by the Cahaba Coal Company to Yarbrough, it had authorized a bond issue, and, pursuant to such authorization, executed a deed of trust to the lands contained in said lease, to secure said bond issue, and had borrowed from the First National Bank of Birmingham about $15,000, depositing its bonds so secured as collateral therefor. Thereafter Davis & Shackelford bought this property from the Cahaba Coal Company, assuming payment of the indebtedness of that company to the First National Bank; but the lien secured by the deed of trust on these lands was not released by the bank. Davis & Shackelford agreed with the bank to pay said indebtedness in equal installments, ma-

turing in 1, 2, 3, and 4 years. The bill alleges that the amount of this indebtedness was about $15,000; that at the time the bill was filed the first note had been paid, but the notes falling due in 2, 3, and 4 years had not been paid. During the negotiations between appellant and appellee, the security of the Davis & Shackelford indebtedness was agreed upon, and appellee "represent-ed to appellant, as a fact, that the notes fell due 6, 12, and 18 months from" that time; that appellant was "un-willing to make its notes due so that practically the en-tire purchase money would be paid before the indebted-ness of Davis & Shackelford fell due, because it was un-willing to risk the payment of the indebtedness on said property secured by said lien." Appellant "did not know the maturity of said indebtednes of said Davis & Shackelford, and relied entirely upon the statement of Yarbrough," who further represented to appellant, "as an inducement to secure the maturity of appellant's pur-chase-money notes as they were executed, that if the notes of Davis & Shackelford to the bank were not as he represented, namely, to be due in 6, 12, and 18 months from that time, he would extend the payments of the notes executed by appellant and secured by the mort-gage, to meet the payment of the Davis & Shackelford notes." When appellant learned of the true maturity of the Davis & Shackelford notes, it protested to Yar-brough, and endeavored to get him to extend the pay-ment of said notes according to his agreement; but this he declined to do.

The bill further alleges that, as an inducement for the sale of said property, Yarbrough represented to appel-lant that the coal in said land on which said mine was opened was very low in ash, and guaranteed that it was 25 per cent better than the Carbon Hill and Jagger coal, and furnished it an analysis showing that the coal con-

tained 13.51 per cent of ash, but that the fact is that the coal contains between 25 and 33 per cent of ash, and is greatly inferior to the Carbon Hill coal; that appellant, in making the purchase of said lease, relied upon the representations made by Yarbrough, and that said representations were untrue, and greatly injurious to appellant; that, immediately after taking possession of the property, appellant sold the coal in the market, representing its quality to be as stated by Yarbrough; and that when the coal was delivered appellant had a great number of countermands and refusals to pay for the coal from those to whom it had just been shipped, on account of its inferior quality and failure to come up to the representations made in accordance with the representations of Yarbrough to appellant.

The bill alleges that appellant will continue to "suffer irreparable damage and loss by reason of its inability to sell said coal on account of its inferior grade and high per cent of ash, and that by reason of its high per cent of ash it is almost impossible to market the product of the mine, and that the value of the property is greatly less on account of the quality of the coal, that it is not worth half as much as it would be if the coal were as represented by Yarbrough, and that it is doubtful if it has any value as a mining proposition because of the inability to sell the coal at a profit." Appellant alleges that it "would not have purchased said property at the price agreed on, but for the false and fraudulent representations by the said Yarbrough."

The bill further alleges that the said Yarbrough Coal Company had no property, except the lease, that it was largely indebted, and that creditors had been threatening to take action to secure possession of the property on the ground that the transfer of the lease to Yarbrough constituted a general assignment; that the Du

Pont Powder Company secured a judgment in the circuit court of Walker county against the Yarbrough Coal Company, prior to the transfer of said lease, and recorded the same in the probate office of Walker county; and that said judgment is still unsatisfied. It is alleged that appellant paid the first note executed by it to Yarbrough, but thereafter, finding the facts as stated in the bill to be true, declined to pay the subsequent notes until Yarbough would make proper adjustment of the amount to be paid and the maturity of the same.

The bill prays: (1) For a temporary injunction restraining Yarbrough from foreclosing the morgtage, which, by advertisement, he was proceeding to do, pending the hearing of the cause, and that a reference be ordered held, to ascertain the difference between the value of the property as agreed on at the time of the purchase and its real value based on the condition and quality of the coal, and that there be decreed an abatement of the purchase money in accordance with the report; (2) that if, upon hearing, it is found that the property is of little or no value on account of the condition of the coal, and that the same was misrepresented, as alleged in the bill, the trade or purchase contract be rescinded in toto, the mortgage canceled, and the purchase-money notes surrendered upon delivery of possession of said property by appellant to Yarbrough; and also (3) that there be decreed a correction and reformation of the maturity of the mortgage, together with that of the notes given in connection therewith, so as to extend the time of payment to meet the payment of the Davis & Shackelford notes, such extension of maturity to run until all the liens against the property have been removed by Yarbrough, as he had contracted with appellant to do.

(4) The sale was of a lease to mine the lands described, together with certain designated mining machinery

and fixtures and other personal properties used in connection with the operation of a coal mine on the lands so leased. In ordinary sales of chattels the law will imply a warranty of title, though none be expressed in the contract, whether it be in writing or by parol.—*Cozzins v. Whitaker,* 3 Stew. & P. 322; *Williamson v. Sammons,* 34 Ala. 691; *Hafer v. Cole,* 176 Ala. 246, 47 South. 757. In *Steele v. Kinkle,* 3 Ala. 352, 357, this court declared that: "Where a vendor professed to be able to make a clear title in fee, either by a direct assertion to that effect, or, while he offers to make such a title, by concealing the fact of his inability to do so, his conduct cannot be otherwise than fraudulent. It cannot be reconciled with fair dealing, because he knows at the time that a disclosure of the truth of the case would prevent the sale," etc.

In *Cullum v. Br. Bank,* 4 Ala. 21, 37 Am. Dec 725, it was said that by offering to sell an estate the vendor virtually represents it as not incumbered by him, or, if incumbered, that he will free it before the sale is executed. —*Morgan v. Patrick,* 7 Ala. 185; *Van Arsdale v. Howard,* 5 Ala. 596. This rule of good faith between vendor and vendee was recently extended, in the case of *Corry v Sylvia y Cia,* 192 Ala. 550, 68 South. 891, where it was held that the seller's silence in regard to incumbrance upon or defect in title, with knowledge of the purchaser's ignorance thereof, is a fraud amounting to an actionable deceit.

If, therefore, there was misrepresentation or concealment that contributed as an inducement to the purchase and the execution of the notes and mortgage maturing as they did, a reformation or a rescission of the contract, as the facts warrant, may be had.—*Southern L. & T. Co. v. Gissendaner,* 4 Ala. App. 523, 539, 58 South. 737; *Wooddy v. Matthews, infra,* 69 South. 607. The jurisdiction of a court of equity to reform a written instru-

ment, which by fraud or mistake is not drawn according to the intention of the parties, is well established.— *Campbell v. Hatchett,* 55 Ala. 548; *Alexander v. Caldwell,* 55 Ala. 517; *Hinton v. Citizen Co.,* 63 Ala. 488; *Berry v. Sowell,* 72 Ala. 14; *Chestnut v. Tyson,* 105 Ala. 149, 16 South. 723, 53 Am. St. Rep. 101; *Hand v. Cox,* 164 Ala. 348, 51 South. 519; *Goulding Fert. Co. v. Blanchard,* 178 Ala. 298, 59 South. 485. And the notes and mortgage may be made to conform to the dates of maturity as agreed on between the parties.—4 Pom. Eq. Juris. § 1376; *Hammer v. Lange, et al.,* 174 Ala. 337, 56 South. 573; 7 Mayf. Dig. p. 281.

(6, 7) As a condition precedent to the exercise of the right of rescission, the party complaining must, if practicable, restore or offer to restore to the party what he has received from him by virtue of the contract. The purchaser must place or offer to place in status quo the vendor, if it is possible for him to do so.—7 Mayf. Dig. p. 283; *Cozzins v. Whitaker, supra; Barnett v. Stanton,* 2 Ala. 181; *Pharr v. Bachelor,* 3 Ala. 237; *Dill v. Camp,* 22 Ala. 249; *Jemison v. Woodruff,* 34 Ala. 143; *Young v. Arntze,* 86 Ala. 116, 5 South. 253; *Rice v. Gilbreath,* 119 Ala. 424, 24 South. 421; *Samples v. Guyer,* 120 Ala. 611, 24 South. 942; *Hayes v. Woodham,* 145 Ala. 597, 40 South. 511; *Continental Jewelry Co. v. Pugh Bros.,* 168 Ala. 295, 53 South. 324, Ann. Cas. 1912A, 657; *Hafer v. Cole,* 176 Ala. 248, 57 South. 757; *Wilks, et al. v. Wilks,* 176 Ala. 158, 57 South. 776. This rule has no application, if it has become impossible for the party complaining to make such restitution, by reason of the conduct or default of the other party to the contract of sale.—*Johnson v. Oehmig,* 95 Ala. 189, 10 South. 430, 36 Am. St. Rep. 204; *Baker v. Maxwell,* 99 Ala. 558, 14 South. 468; *Hafer v. Cole, supra.*

(8) A bill to cancel and rescind a contract of sale is not rendered objectionable by the fact that the buyer

might sue at law for breach of warranty or for deceit.— *Baker v. Maxwell, supra; Fay & Egan Co. v. Ind. Lumber Co.*, 178 Ala. 166, 59 South. 470; *Hafer v. Cole, supra.* This bill does not offer to make restitution, or show sufficient reason for such failure, and as a bill for rescission was subject to demurrer.

(9, 10) If the purchaser, having the right to rescind, elects not to do so, he may claim an abatement of the purchase money, while retaining the property. If the property is of any value whatever, though not adapted to the particular use intended, the purchaser cannot avoid entirely the payment of the purchase money; but the abatement can be only to the actual value of the property.— *Young v. Arntze, supra.* If it is impossible to restore the status quo and to put the parties in the condition existing before the contract was made, the remedy must be by abatement, and not by rescission. The coal mine leased had been operated by the vendee, and the fixtures, machinery, and other personal properties used. The bill does not show clearly that the status quo could be restored. The vendee asks for an abatement of the agreed purchase price if the reference should disclose that there was a difference between the value of the property as agreed upon by the parties, and its actual value, on account of the inferiority of the coal and its not being as represented by the vendor to appellant vendee. The bill in this respect was not subject to the demurrer interposed.—*Hogan v. Thorington,* 8 Port. 428; *Jemison v. Woodruff, supra; Perry v. Johnston,* 59 Ala. 648; *Brown v. Freeman,* 79 Ala. 410; *Eagan & Co. v. Johnson,* 82 Ala. 233, 2 South. 302; *Continental Jewelry Co. v. Pugh Bros., supra.*

The bill alleges the representations of H. F. Yarbrough as to the maturity of the Davis & Shackelford notes and mortgage, the agreement that if they were not

due as he represented he would extend the payment of appellant's notes and mortgage to meet the payment of the Davis & Shackelford notes, and the fact that, instead of these notes being due in 6, 12, and 18 months, they were not due until 1, 2, 3, and 4 years—long after appellant's purchase money notes had fallen due. If the parties agreed, as alleged in the bill, to postpone the maturity of the indebtedness so as to meet the Davis & Shackelford notes, and as not to mature before the due date of the latter notes, appellant's remedy was in a court of equity, to enjoin the premature foreclosure of the mortgage securing the notes, and to have reformation of the mortgage and notes according to the agreement of the parties. In this respect the bill is free from the demurrer interposed.—*Struve v. Childs,* 63 Ala. 473; *Vaughan v. Marable,* 64 Ala. 60; *Glover v. Hembree,* 82 Ala. 324, 8 South. 251; *Henderson v. Wilson,* 161 Ala. 508, 49 South. 845; *Caldwell v. Caldwell,* 166 Ala. 406, 52 South. 323, 139 Am. St. Rep. 48; 2 Jones on Mortgages, § 1801; *Holden v. Hoyt,* 134 Mass. 181; *Dey v. Dey,* 23 N. J. Eq. 88.

(11) Though a bill shows cause for injunctive relief, if the sworn answer denies all the averments thereof upon which any right to relief can be predicated, the temporary injunction issued is properly dissolved.—Code 1907, § 4535; *Nelson, et al. v. Hammonds,* 173 Ala. 14, 55 South. 301; *Salmon v. Salmon,* 180 Ala. 252, 60 South. 837.

(12) The answer admits that representations of the nature alleged in the bill, as to the quality of the coal and as to the analysis thereof, were made to appellant, but avers that such were expressions of opinion. If the foreclosure is allowed to proceed, the personal property conveyed by the mortgage would not be subject to redemption, and if sold would be lost; and appellant

[Lucas v. Skinner, et al.]

would then not be able to restore it to appellee if, in the further conduct of the cause, he should elect so to do. The foreclosure should be temporarily enjoined, to preserve the status quo till the coming in of the full proof, that equity may be done between the parties.—*Hicks v. Meadows,* 193 Ala. 246, 69 South. 432.

The temporary injunction is continued in force and effect till further orders, after appropriate pleading and proof, of·the Walker law and equity court, sitting in equity and having jurisdiction of said cause. The judgment is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.