# Rattary *et al.* *v.* Cook & Webb.

*Trespass for taking Personal Property.*

1. *Credibility of party as witness.* — A witness who is a party to the suit is not, on that account, less credible than a witness who is not a party.

2. *When title to personalty passes by delivery* — Where lumber was sawed by plaintiffs for defendant, and paid for in advance by work done by defendant in repairing plaintiffs' mill, and deposited at a selected place on the river bank; and the defendant was notified that it was at his risk, and that it would be his loss if carried away by high waters, — *held*, that this was such a delivery as passed the title, and vested the right of possession in the defendant.

APPEAL from the Circuit Court of Cherokee.

Tried before the Hon. W. L. WHITLOCK.

The facts of this case are fully and correctly stated in the opinion of the court, except as to the character of the action. The complaint was in the form prescribed (Rev. Code, p. 677)

[Rattary v. Cook.]

for "trespass in taking goods," and not that for "the conversion of chattels."

FOSTER & FORNEY, for appellants, cited *Chapman* v. *Lathrop*, 6 Cowen, 110; *Bates* v. *Conkling*, 10 Wend. 389; Hilliard on Sales, p. 94, §§ 74, 81, 82.

M. J. TURNLEY & SON, *contra*.

PETERS, C. J. — This is a suit in trover for one thousand dollars, as damages for the conversion of twenty thousand feet of sawed lumber, the property of Cook & Webb, as partners, who were the plaintiffs in the court below. Samuel Noble and Charles Rattary were the defendants below. The case was tried by a jury, on the plea of not guilty; and there was a verdict and judgment for the plaintiffs, for the sum of $194.19, and costs. From this judgment the defendants below appeal to this court. The errors assigned, which it is necessary to notice in this opinion, are based upon the ruling of the court below on certain of the charges to the jury, and certain charges which were asked by the defendants and refused.

It appears from the bill of exceptions, that there was testimony offered to the jury on the trial below, which tended to show that the plaintiffs made a proposition in writing to Samuel Noble, one of the defendants, which was accepted by him, and which is in these words: —

"Mr. Samuel Noble: Dear Sir, — If you will make the following repairs on the saw-mill we have rented from Daughdrill & Standifer, to wit: bore out the cylinder, furnish new feed-pipe, make new packing rings, furnish new brass for fly-wheel shaft, we will pay you for said repairs by cutting for you such lumber as you may require for the use of Cornwall Iron Works Company, or its contractors; said lumber to be cut without any unreasonable delay, after the mill is repaired, and to be the first lumber the mill shall cut. The bill for repairs of the mill while run by Daughdrill & Standifer we will assume, and pay in lumber as above, and at the same price and terms as was accepted by Daughdrill & Standifer. The amount of lumber cut under this arrangement shall not exceed five thousand feet, over and above the bills now in Standifer & Daughdrill's hands. Said bills may, however, be altered and amended at any time. The repairs thus paid by you for engine shall be considered an advance payment on lumber to be cut by us, and shall remain a lien on the same until full payment is made, not only for repairs on engine for us, but for that done by you for Daughdrill & Standifer, or Standifer & Daughdrill, as the case may be. Said mill is located in Cherokee county, Ala."

This writing was dated July 12, 1868, and was signed by John D. Cook and L. W. Webb; and on it was indorsed these words: " I hereby accept this proposition, [and] will do the repairs as stated," which was signed by said Samuel Noble, one of the defendants. In connection with this contract, there was also testimony offered, which contributed to show that the repairs mentioned were made by Noble; that the same was worth about $108, and was not to exceed $100; that when the mill was started, Cook & Webb made known to Noble that they needed hands to assist them in sawing the lumber required by Noble, and he sent an engineer and a sawyer, and other hands, who aided them until the lumber he desired to get was finished. There was also testimony tending to show that the place was selected for the delivery of the lumber for Noble; and after the plank was sawn, about 10,000 feet was deposited by Cook & Webb at the place selected. There was also some evidence showing the price of the plank at the mill, and at the place of deposit, which was different. There was also evidence going to show that Cook & Webb, the plaintiffs, had given Noble notice that the plank was on the river bank (the Coosa), and that there was danger of the waters rising and carrying off the lumber, and if it was lost in this way it was Noble's loss. Noble was superintendent of the iron works above said, and Rattary was his agent; and Noble wanted the plank to finish a bridge. After the deposit of the plank as above said, Noble sent his wagons to bring it away to where he needed it. But when the wagons reached the place where it was deposited, Cook & Webb refused to let them have it, and sent them away without it. In this connection, there was also some evidence that Cook & Webb had sent word to Noble that they wished him to pay for the plank before it was taken away, or that they wished to see him about it before it was taken away. Noble then sent his wagons a second time, and brought off the plank, without the permission or assent of Cook & Webb. The plank was used by Noble on his bridge. There was much conflict in the testimony. It is all set out in the bill of exceptions, but not all stated in this synopsis.

1. The error assigned on the charge of the court below, numbered 1, cannot be sustained. It insists upon the principle, that a witness who is a party to the suit is less credible, without impeachment, than a witness who is not a party to the suit, and who is equally unimpeached. Under our statute, interest does not disqualify a witness who is a party to the suit, or impair or weaken his credit. Every witness, with a fair character, and a capacity to tell the truth as he knows it, stands upon the same footing before the jury. A competent witness is a credible witness, until his character for truth and veracity is impeached.

[Rattary v. Cook.]

1 Greenl. Ev. §§ 461 *et seq.*; 1 Stark. Ev. pp. (211) *et seq.* The jury alone are the judges of the facts of the issues submitted to them. , They must, therefore, take the evidence of all the witnesses as equally true, when the witness is unimpeached. 2 Stark. Ev. p. (12); 8 Rep. 308; Shep. Dig. p. 514, § 34, and cases there cited. If there is conflict in the evidence, the jury must reconcile it, if they can. If they cannot, then they may disregard that which they think is untrue. In doing this, there is no fixed rule to guide them, save experience and sound judgment. There was, then, no error in refusing the first charge asked by the defendants.

2. The charges numbered 4, 6, and 7, which were asked by the defendants and refused by the court, involve, in substance, the same question. They will, therefore, be considered together, as presenting the same point for solution. I will state one of the charges. It is in these words: " That if there was such a delivery of the lumber at the river bank as to place it at the risk of the defendants, if carried away by high waters, and defendants would suffer the loss, then the property in the lumber passed to the defendants, and they had the right to carry it away." Under the evidence in this case, this charge should have been given. There was evidence tending to show that the plank had been paid for, and delivered at the place appointed, under the contract to repair the mill. This was not strictly a sale, but a special contract, which must be governed, more or less, by the same rules. Benj. Sales, p. 1; 2 Kent, 615; 2 Bla. Com. p. 446. The only sale attempted to be shown, in this case, was the written agreement above set out. If the plank was delivered under that contract, — and Noble says it was, and was his plank, and was sawed for him, partly by his own hands, and was delivered on the bank of the river for him, — then, such a delivery being after the price was paid, and under the lien in the contract, it vested the property and the right to its possession in the defendant, Noble; and his agent, Rattary, could bring it away without a conversion. *Magee* v. *Billingsley*, 3 Ala. 679; *Rochelle* v. *Harrison*, 8 Port. 352; Benj. Sales, pp. 217, 219, 497. As there was some evidence to sustain the view taken by the defendants' counsel, that there was a delivery under the written contract above set out, and Noble says there was no other, these charges should have been given. But the jury was not bound to believe that there was such a delivery, unless the evidence required it, of which no opinion is expressed in the present state of this controversy. I think there was some evidence tending to support these charges. The principles of law they announce are correct. They should, therefore, have been given. 1 Brickell's Dig. p. 338, § 42. Whether this evidence was strong or weak, true or false, has

[Tanner v. Mills.]

nothing to do with the question involved. Of the force and credibility of the evidence the jury must judge; but whether there was such evidence of a delivery of the plank sold and paid for, however weak or untruthful it might be, the court must judge. An error in the judgment of the jury can be corrected on new trial, if they find against the evidence; but an error by the court is bad on appeal to this court.

There seem to have been several exceptions to the refusals to exclude evidence objected to by the defendants on the trial below. But the assignment of error does not point out, with any precision, which one of these exceptions is intended to be insisted on. Such an assignment is insufficient, particularly when the brief of counsel does not define it, as is the case here.

The judgment of the court below is reversed, and the cause is remanded for a new trial.