# J. M. Card Lumber Co. v. Ozement.

*Bill to Enforce Equitable Mortgage or Lien.*

(Decided April 16, 1914.   Rehearing denied July 2, 1914.
65. South. 792.)

1. *Estoppel; in Pais; Pleading.*—If it does not affirmatively appear from the face of the bill, an estoppel in pais must be specially pleaded.

2. *Fraudulent Conveyances; Sale of Timber; Lien; Retention for Purchase Price.*—A contract for the sale of standing timber with incidental rights for cutting, and manufacturing into merchantable lumber, retaining a lien on the timber and the manufactured product

for the unpaid portion of the purchase price and at the same time authorizing the purchaser to sell the lumber in the usual course of business, was not fraudulent as against the purchaser's creditors.

3. *Logs and Logging; Deeds; Lien.*—Where a contract for the sale of standing timber reserved a lien for the unpaid portion of the purchase money on such timber rights, and the products manufactured therefrom, and authorized the grantor in case of default in one note, to immediately mature notes not due, and to foreclose the lien, and at the same time authorized the grantee to sell the product of the mill in the ordinary course of business, such liens did not apply to lumber so sold, title to which had passed prior to the declaration of the grantor maturing the notes not due after default in those due. but such lien was available as against lumber sold, but not identified so as to pass title before the grantor elected to foreclose the lien, although the purchaser had made advancements on said purchase.

APPEAL from Tuscaloosa County Court.

Heard before Hon. H. B. FOSTER.

Bill by J. A. Ozement against M. G. Mills and others to enforce an equitable mortgage or lien on certain timber and lumber manufactured therefrom. From a decree for complainant, respondent J. M. Card Lumber Company appeals. Affirmed.

OLIVER, VERNER & RICE, for appellant. The contract between Mills and Ozement under which Ozement is seeking to enforce a lien, is void so far as the lumber is concerned.—§ 4287, Code 1907; *Adler v. Keith*, 152 Ala. 452; *Christian C. G .Co. v. Lyon*, 121 Ala. 84; *Gillespie v. McClesky*, 160 Ala. 298. Ozement is estopped from setting up his claim against the property because, by his conduct, he permitted Mills to sell the same and to procure money thereon. His vendor's lien was waived.—*Fields v. Drennen*, 115 Ala. 558. The lumber company's rights were superior to those of Ozement, at least to the amount of money paid on the purchase price of the timber, knowledge of which Ozement had.— *Ashurst v. Ashurst*, 119 Ala. 222; *Scharfenburg v. Decatur,* 155 Ala. 655; *Rattery v. Cook*, 50 Ala. 352; *R. R. Co. v. Cobb*, 73 Ala. 396.

P. A. TRAWEEK, for appellee. There is nothing squinting at the waiver of a lien.—*Stevens v. Adams,* 93 Ala. 117. If there might have been a presumption of a waiver it is only on the assumption that Mills remained solvent, his subsequent insolvency reviving the lien.—50 Am. Dec. 759; 69 Fed. 302. The timber was standing, and the lumber had a potential existence, and a valid lien was created.—*Ballard v. Mayfield,* 107 Ala. 396; *Patapsco G. Co. v. Ballard,* 107 Ala. 710; 6 Cyc. 1050. There was no fraud as against the creditors of Mills.—*Adkins v. Bynum,* 109 Ala. 28; *Cox v. B'ham Co.,* 125 Ala. 320. Ozement had a right to declare all the notes due upon the default in one. The Card Lumber Company cannot complain as the property had not passed to it by an executed contract of sale.—*Foley v. Felrath,* 98 Ala. 176; *McFadden v. Henderson,* 128 Ala. 221; 17 South. 769. An advancement of part of the purchase price does not vary the rule.—15 Atl. 123; 9 Oregon 66; 91 N. W. 918; 10 N. E. 888.

McCLELLAN, J.—This bill, filed by appellee against M. G. Mills and the appellant company and J. W. Carson, Mills' trustee in bankruptcy, seeks the enforcement of an equitable mortgage or lien on certain timber rights and certain manufactured timber (cut into merchantable lumber) upon or taken from the lands of the appellee. The basis of the right complainant asserts is an instrument executed July 30, 1910, by complainant and his wife, on the one part, and M. G. Mills, on the other. Complainant was the owner of a considerable area of timber lands. Mills appears to have been a sawmill operator. The instrument, with all formality necessary to convey an interest in realty, conveys all of the timber of a certain kind on certain lands to Mills, "in accordance with the terms, conditions and stipula-

tions" therein set forth. Mills was to pay $4,000 for the timber; $1,000 in cash (which was paid), and the remaining $3,000 was to be paid in 20 monthly install-ments "as evidenced by his 20 several promissory notes, * * * each for the sum of $150," payable on the 1st day of February, 1911, and on the 1st day of each suc-ceeding month until all were paid. In the instrument provision was made for a mill site, adjacent to a rail-road and for roads, etc., over the complainant's lands to afford the means for "cutting, loading, hauling, and transporting said trees and timber or the products there-from." It was also provided in the instrument that:

"If the party of the second part [Mills] shall at any time sell or transfer his rights hereunder, or if he shall fail to pay any one or more of the purchase-money notes hereinbefore mentioned, when the same become due, then the parties of the first part [Ozement and his wife], their agents, legal representatives, or assigns, shall have the right to declare all said payments or notes due and payable at once, and they shall all then be due, and parties of the first part shall have a lien upon all timber, logs, or lumber cut or taken from lands un-der this contract, as well as a lien on the grantee's tim-ber rights therein conveyed as security for the payment of said notes, which lien may then be enforced immedi-ately: To have and to hold the above-menitoned tim-ber and other rights unto the party of the second part, his heirs and assigns, for the time or times and accord-ing to the terms and conditions hereinbefore set forth."

Time limits, for different tracts, were fixed for the exercise of the rights granted. The instrument was ap-propriately and properly recorded in Tuscaloosa coun-ty, wherein the land lies.

Mills made default in the installment due October 1, 1911, and thereupon complainant, as under the agree-ment he might do, matured the remaining notes.

It is insisted that complainant should be concluded in consequence of the estoppel in pais effected by his consciously allowing Mills to dispose in regular and long-continued course of dealing with the product drawn from these timber rights, including that in question which the company claims to have purchased and received the title to from Mills. The pleading does not raise or present this inquiry. Estoppel must be specially pleaded if it does not affirmatively appear from the face of the bill.—*Jones v. Peebles,* 130 Ala. 269, 30 South. 564.

The other matter urged is that the contract lien established by the instrument is fraudulent and void as against creditors, for that the lienor (Mills) retained possession of the subject of the lien or charge. The exact question was decided against appellant's contention in *Adkins v. Bynum,* 109 Ala. 281, 19 South. 400. The soundness of its doctrine has been since recognized and reaffirmed in the following decisions delivered here: *Glass v. Tisdale,* 106 Ala. 581, 19 South. 70; *South Ala. Oil Co. v. Garner,* 112 Ala. 447, 20 South. 628; *Stanley v. Johnson,* 113 Ala. 344, 21 South. 823; *Builders', etc., Supply Co. v. First Nat. Bank,* 123 Ala. 203, 219, 26 South. 311. In *South Ala. Oil Co. v. Garner,* Justice COLEMAN writing, it was said:

"In the case of *Adkins v. Bynum,* 109 Ala. 281 [19 South. 400], which was a sale of merchandise, the vendee at the same time executing a mortgage to the vendor to secure the payment of the purchase money, the mortgage stipulating that the vendee might dispose of the goods in due course of trade, the proceeds to be applied to the payment of the mortgage debt, we held that such a transaction could not be a fraud upon creditors. There is quite a distinction to be observed in cases of sales and transfer by a debtor of property liable to his debts, which by the sale or conveyance is put beyond

their reach, and property purchased by him, the vendor securing the purchase money either by retaining the title in himself, or by having a mortgage executed back contemporaneously with the sale upon the property."

Here the contract lien was established, if at all, by the same instrument that transmitted to Mills the rights and interests described therein. The soundness of the doctrine of *Adkins v. Bynum* was not questioned in *Gillespie v. McClesky,* 160 Ala. 299, 49 South. 362.

The lien established by the instrument became effective upon the consummation of the purchase and sale by and between Mills and Ozement; and the manifest intention of the parties was that ·the produce should be sold in due course of the business to be carried on by Mills, and that when a completed sale of subjects of the lien before the declaration by Ozement—after default in the payment of an installment—maturing all unpaid installments should operate to invest such a purchaser with title to the so-purchased property free from the charge of the lien established by the contract. The instrument, being seasonably recorded, bore to all conclusive, constructive notice of the rights therein and thereby secured to Ozement.

The lien of the contract having been created more than four months before Mills' bankruptcy proceeding was instituted, section 67 of the Bankruptcy Act was and is without effect.

The decisive question remaining is whether a sale of the lumber in question to the Card Lumber Company by Mills in regular course of business was consummated, completed, so as to pass the title; whether the sale thereof was executed or executory before Ozement matured the whole indebtedness, as under the contract he might and did do, and proceeded with the assertion if his rights.

[J. M. Card Lumber Co. v. Ozement.]

This familiar general doctrine, reiterated in *McFadden v. Henderson,* 128 Ala. 221, 231, 29 South. 640, 643, is applicable to the case made by the pleadings and the proof:

"If anything remains to be done by either party to the transaction before delivery, as, for example, to determine the price, quantity, or identity of the thing sold, the title does not vest in the purchaser, and the contract is merely executory."

It appears from the evidence, with satisfactory certainty—indeed without basis for any real doubt—that there was no identification of the alleged subject of the sale of lumber by Mills to the appellant company. It is shown by the evidence that advances in money were made by the company tokening an executory agreement to buy, but this was, of course, insufficient to show such vesting of title in the company as operated to divest the lumber of the lien imposed thereupon by the contract. The case of *Rattary v. Cook,* 50 Ala. 352, was radically different in its facts from those disclosed in the cause at bar. There the lumber was removed, under the contract, to a place agreed upon by the parties and nothing by way of identification was left to be done.

Accordingly the lien of Ozement was superior to any claim of the appellant to the lumber in question; and its enforcement was properly decreed by the court below.

The decree is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and SOMERVILLE, JJ., concur.