18 So.2d 555

**RANDOLPH v. RANDOLPH.**

**5 Div. 387.**

Supreme Court of Alabama.

June 1, 1944.

Rehearing Denied June 29, 1944.

R. T. Milner and Holley, Milner & Holley, all of Wetumpka, for appellant.

Huddleston & Jones, of Wetumpka, and Ball & Ball, of Montgomery, for appellee.

STAKELY, Justice.

This is an appeal from a final decree of the equity court cancelling a deed executed by Frank Randolph (appellee) to Laura Randolph (appellant). The deed embraced about 1144 acres of farm lands in Elmore County.

This litigation originated in the form of two ejectment suits brought on the law side of the court by Laura Randolph, one suit being against Frank Randolph alone, the other suit being against Frank Randolph and his tenants, S. P. Storrs and J. Loyd Abbot. Frank Randolph filed a motion to transfer the cases to the equity side of the court. The suits were transferred by order of the court to the equity side of the court and there consolidated, the two tenants being stricken as parties to the cause. We conclude that the transfer and consolidation were by agreement from our examination of the record. The record shows that there was no contest of the motion to transfer; that the first case was transferred by order of the court; that the second case was transferred and consolidated with the first case by agreement of the parties and in the bill of complaint then filed in the equity court by Frank Randolph, the consent of Laura Randolph to the transfer and consolidation was alleged. The truth of this statement was not questioned. The first ejectment suit involved all the lands embraced in the deed, except that part leased to S. P. Storrs, and the second ejectment suit embraced that part of the lands embraced in the deed which had been leased to S. P. Storrs.

The allegations of the bill of complaint filed by Frank Randolph in the equity court show in substance the following: Complainant is the owner and in possession of certain lands lying in Elmore County, Alabama (the lands embraced in the deed heretofore referred to). Complainant married the respondent, Laura Randolph, about 1916. She had been previously married and was a widow with two children, a boy of about five years of age and a girl of about fifteen years of age. Thereupon complainant and his wife, with her children, took up their residence on complainant's lands—the lands referred to above—where he supported her and her children and where they lived for some years. Later, at respondent's request, complainant was persuaded to move with her and her children to lands owned by her in Elmore County. During the year 1934, complainant and respondent were living together as husband and wife on her property. About that time respondent began to bring up in frequent discussion the fact that complainant had no last will and testament and what would become of complainant's property at his death. There was some discussion about complainant making a will, but respondent urged the disadvantages of a will which would necessitate the expense of administering complainant's estate, and strongly insisted and urged that it would save considerable expense of administration if complainant would sign a deed to his real estate, to be used only at his death. Respondent employed her attorney to prepare such a deed, and complainant signed the same, with the express understanding and agreement that it would not be used or delivered, but would be kept subject to complainant's control, and would not be recorded or become of any effect during the complainant's lifetime, and complainant was free at any time to destroy the deed and make such other disposition of the real estate as he might see fit. It was further agreed that the deed should not in any way interfere with or limit complainant's possession or ownership of the property. After the deed was signed, it was never delivered, and it was to be kept in the home for use only in event of complainant's death.

The deed was signed January 4, 1935, and soon thereafter complainant decided to destroy the deed, and being unable to find it in the home, asked his wife where it was, but she gave him an evasive answer, and although complainant tried on several occasions to find the deed and asked his wife where it was, he was not able to find it. On November 3, 1935, respondent recorded the deed in the office of the Judge of Probate of Elmore County, Alabama, in violation of the agreement that the deed would not be recorded or used or be effective until complainant's death, but did not disclose either her intention of recording the deed or the fact that it had been recorded, and the fact of the recording was not discovered by complainant until later.

After complainant signed the deed, he continued to exercise exclusive dominion and control over the real estate and continued to pay the annual principal and interest payments in varying amounts from $700 to $900 each year on a mortgage on the real estate held by the Federal Land Bank of New Orleans, which was originally for $15,000, but which was reduced in amount by principal payments, and which is still in effect and unpaid. Complainant continued to pay the taxes on the real estate and continued to rent out part of the land to tenants and to farm the balance of the land himself, and at no time prior to the filing of the ejectment suits did the respondent exercise any dominion, possession or control over the real estate or claim any of the rents or profits thereof, nor has she ever paid anything on the mortgage, any of the taxes, or any of the expenses in connection with the upkeep of the property, all of which complainant has borne.

Soon after the execution of said deed by complainant, respondent's wifely affectionate attitude toward him began to undergo a complete change and she began to show less and less interest in him or attention to him, and a few weeks after she had prevailed upon complainant to sign the deed, she moved out of his room and into a separate room in the house, and finally in the early part of April, 1941, she ordered complainant out of her home, told him never to return thereto. Complainant thereupon moved back to the property embraced in the deed, where he now resides and where he has resided since that time. Since that time complainant and respondent have not lived together, no divorce proceedings have been instituted by either party, and the marriage relationship still exists. Soon after respondent drove complainant out of her home, she instituted against him the ejectment suits.

Although the deed recites a consideration of $5, neither that amount nor any other amount was received by complainant for the execution of the deed. The deed was never delivered and was never intended as a conveyance of title to complainant's wife, but was executed under the circumstances and for the consideration hereinabove set forth. The income from the land embraced in the deed is and has been complainant's main source of support. Respondent owns in her own right real estate, the value of the equity of which is equal to or greater than the value of the equity of complainant's property.

The bill of complaint contains the following paragraph:

"12. Complainant avers that his signature to the deed referred to in paragraph 5 of this bill was obtained by fraud and as a part of a fraudulent scheme on the part of the respondent to deprive him of the property described in said deed and that he signed said deed at a time when he and his said wife were living together in the close and confidential relationship of husband and wife and in such relationship he had a right to rely upon his wife not to betray his trust in her or to use said deed contrary to the purpose for which it was signed, namely, to serve in the place of a will, but that respondent's use of said deed by recording same and using said deed as a present conveyance instead of in the place of a will was a breach of trust on her part and a violation of the confidence which he had placed in her as a wife and was a fraudulent use of said deed and was in violation of the agreement and understanding between them as to the purpose of said deed and the use to which it was to be put, namely, that it was not to be used, or to become effective or to be recorded unless complainant died with said deed unrevoked and still in existence. Complainant avers that the deed was fraudulently obtained by respondent and was fraudulently used by her in violation of his trust in her. Complainant further avers that said deed as recorded and as used in violation of the confidential agreement under which it was executed constitutes a cloud on complainant's title to said real estate and should in equity and good conscience be set aside, cancelled and held for naught."

The prayer of the bill was for a decree setting aside and cancelling as a cloud on complainant's title the deed referred to.

The answer of the respondent in substance admitted that the complainant was in possession of the real estate, but denied that he was the owner thereof. She denied any condition or agreement relating to the execution or delivery of the deed as alleged by the complainant, but on the other hand alleged in effect that the lands were conveyed to her because complainant was fearful that he would not be able to keep up the payments thereon; that he had borrowed money from her and had been unable to repay the same; that the deed was pre-

pared at the instance and request of complainant and signed by him after he had carefully checked the description contained in the deed; that she had not recorded the deed immediately because she had no funds with which to pay the recording fees; that the complainant, over her protest and objection, unlawfully entered upon and took possession of the lands; and that her changed relations toward complainant were due to his lack of support and abuse of her, and that she had ordered him out of the house because living with him had come to be intolerable; that although he had received the rents and income and profits from the land, he should be held accountable for the same. She denied any fraud or breach of trust on her part.

Included in the answer was a demurrer in effect taking the position that there was no equitable ground for cancellation of the deed; that there were no facts alleged showing any fraud except by way of conclusion; that if the bill shows any ground for cancellation it is for lack of delivery of the deed, which is a legal defense, which was available to complainant as defendant in the suit at law; that the bill cannot be regarded as a bill to quiet title in that there was and is a suit pending involving the title to the property; that if the complainant had any grievance, he has a plain and adequate and complete remedy at law.

The testimony was taken orally before the court and the cause was submitted upon the demurrer and the testimony. The rulings for review are the decree of the court overruling the demurrer and the decree of cancellation on the merits.

The bill of complaint contains two aspects, (1) cancellation of the deed because of its non-delivery or, to state it another way, because of breach of the conditions attached to its operation; (2) cancellation of the deed because it was induced by fraud or fraudulently used in breach of trust.

 It is urged that the allegations of the first aspect of the bill show no delivery of the deed and that if there was no delivery, this is a purely legal defense, which was fully available in the suit in the law court. This ordinarily would be true. Griswold et al. v. Griswold et al., 148 Ala. 239, 42 So. 554, 121 Am.St.Rep. 64; Strickland et al. v. Griswold et al., 149 Ala. 325, 43 So. 105; Powell v. Powell, 217 Ala. 287, 116 So. 139.

 But the case was transferred to the equity side of the docket by agreement of the parties. It therefore cannot now be said that the equity court should not take jurisdiction, because of an adequate remedy on the law side, provided there is a basis for equitable jurisdiction. There are matters which an equity court has no power to determine, even when consent to its jurisdiction is given, but if the subject matter is of such a character that jurisdiction may be conferred by consent, then after such consent has been given, the jurisdiction of the equity court cannot be questioned. 19 Am.Jur. p. 54. We make it clear that appellant is not assigning as error the transfer of the cause to the equity side of the court, but has merely raised with entire propriety the question of the power of the equity court to act.

 Here we are dealing with the right to cancellation vel non of a deed. It cannot be disputed that this is a subject matter of equitable jurisdiction (Albert v. Nixon, 229 Ala. 273, 156 So. 775; 12 C.J. S., Cancellation of Instruments, § 50, p. 1022; 9 Am.Jur. p. 362), especially where the instrument is claimed to be a cloud on title of one in possession of real estate. 44 Am.Jur. p. 4. According to the record, the consolidated suit now in equity is the only suit between the parties. There is no other suit pending to test the validity of the title. There was no error in overruling the demurrer on the ground that there was a plain and adequate remedy in the law court. Nor do we think that other grounds of demurrer were well taken.

 Under the first aspect of the bill, we do not think that, under the evidence, complainant made out a case. The proof shows that Frank Randolph and his wife went to the house of Sam Cook, a Justice of the Peace, for the purpose of executing the deed. After it had been executed by Frank Randolph and acknowledged, Laura Randolph picked up the deed in the presence of Frank Randolph and retained it without objection on the part of Frank Randolph. True, Frank Randolph asked her for the deed some months later, but that would not change what amounted to manual tradition of the deed at the time of its execution. Since the deed was delivered to Laura Randolph, and she was the grantee in the deed, the conditions claimed by Frank Randolph to be attached to its use and operation must fall.

"The delivery, therefore, of a deed complete on its face to the grantee is an absolute delivery, whatever conditions may be orally annexed to qualify or postpone its operation." Hargrave v. Melbourne & Troy, 86 Ala. 270, 5 So. 285, 286.

See also Shelby v. Tardy, 84 Ala. 327, 4 So. 276; Cherry, Smith & Co. v. Herring, 83 Ala. 458, 3 So. 667; Alford v. Henderson, 237 Ala. 27, 185 So. 368.

"The general rúle is that the delivery of a deed to the grantee or his agent cannot be a delivery in escrow." Alabama Coal & Coke Co. v. Gulf C. & C. Co., 165 Ala. 304, 308, 51 So. 570, 571.

It should be kept in mind that delivery of the deed vel non must first be determined and then can be considered the validity and effect of conditions attached to its use and operation.

"Parol evidence is admissible to show that a deed in the possession of a grantee was not delivered. The principle that parol evidence is not admissible to contradict a deed has no application to a case of this kind. There is a distinction to be drawn between a case where evidence is offered for the purpose of showing a deed was not to be delivered until the performance of some condition precedent and a case where it was actually delivered with the agreement that the condition was to be performed. In the former case the object of introducing such testimony is to show that the instrument was never legally delivered, and that, consequently, it never possessed any vitality. In the latter, the effect of the evidence would be to contradict a written instrument which is absolute upon its face, by showing in opposition to its terms that it was conditional and not absolute.' " Alabama Coal & Coke Co. v. Gulf C. & C. Co., supra.

We come now to a consideration of the second aspect of the case. This ᵖpresents a very different basis for relief from the first phase of the case, because relief is here sought on the basis of fraud. The intent of the grantor is of paramount importance in passing on the question of delivery. Where the grantor does not consent to delivery, there can be no delivery. It follows that the deed must be considered in effect as undelivered where its possession is procured by fraud. 16 Am.Jur. p. 503.

The evidence on this phase of the case was in sharp dispute and presented in great detail, all of which it is not practicable to set out here. In a general way the complainant's case is similar in facts and in principle to the case of Fuller et al v. Scarborough, 239 Ala. 681, 196 So. 875, 876, decided by this court. In that case where the wife procured a deed to herself from her husband, this court made it clear that where the fraud goes to the inducement and consideration of the deed, a court of equity is open to the injured party. In that case, this court, speaking through Mr. Justice Thomas, said:

"We have carefully examined the amended pleading and are of the opinion that the trial court has acted within the rule of Morgan v. Gaiter, 202 Ala. 492, 80 So. 876, 878, so well stated by Mr. Justice Gardner, as follows:

" ' "Fraud, as understood and denounced in equity, includes all acts, omissions, or concealments, which involve a breach or lack of equitable duty, trust, or confidence, justly reposed, which will be injurious to another, or by which an undue or unconscientious advantage is taken of another."' Kennedy's [Heirs] v. Kennedy's [Heirs], 2 Ala. 571.

" 'That the averments of the bill are sufficient to justify the cancellation of these instruments upon the ground of fraud is, we think, too clear for further discussion. * * *'

"It is insisted that an action of ejectment was a remedy in such case. Such remedy in a law court would not apply for the reasons well stated by Mr. Justice Somerville in Davidson v. Brown et al., 215 Ala. 205, 110 So. 384, 385, as follows:

" '* * * the fraud going to the consideration and inducement only, and the instrument being voidable merely—equity will intervene to declare a rescission of the contract and the surrender and cancellation of the deed, or a reconveyance of the property, regardless of complainant's want of possession. * * *

" 'In such a case there is no remedy by ejectment at law, because fraud not going to the execution of the deed, as by misreading it to the grantee, or misrepresenting its contents, or the like, is not available in a court of law to nullify the deed, and rescission by the vendor, though effective in other respects, does not revest in him the title to land once fully vested in the purchaser. * * *'" Fuller v. Scarborough, 239 Ala. 681, 683, 196 So. 875.

See also Dunn v. Ponceler et al., 235 Ala. 269, 178 So. 40. The proof tended to show that in 1934, the children of Laura Randolph were grown, and the daughter had moved away. Frank Randolph was then fifty-two years of age and his wife was older. It was then that the discussions began as to what would become of his property at his death. There were no children of their marriage and Laura Randolph pointed out that her children would not inherit from him. Accordingly she suggested that some arrangement be made so that upon his death, which would in the natural course of events occur after her death, she being the older, his property would go to her children. He was willing to make a will. She importuned him for a deed on the ground that this would save the expense of administration. There were no witnesses to any of these discussions. He finally agreed to make the deed, provided in effect the deed was equivalent to a will, that is, it would not take effect until his death, and would be revocable at any time he desired, and with the further provision that the deed would not be recorded or used.

The son of Laura Randolph had the deed prepared. The consideration named in the deed was not paid, nor was any other consideration paid.

Soon after the deed was signed, Frank Randolph asked for the deed a number of times without success, and in November, 1935, after the execution of the deed in January, 1935, the deed was recorded by Laura Randolph, without any knowledge on the part of Frank Randolph.

In the meantime, the marital relationship had disintegrated and in 1941, she drove him from her house. The ejectment suits were filed shortly thereafter by her.

The evidence is without dispute that during the period from the execution of the deed to the institution of the ejectment suits, Frank Randolph did the following with reference to the property: He stayed in possession and exercised complete dominion and control over it. He collected and retained the rents and profits without objection on the part of Laura Randolph. He paid the taxes and all costs of insurance and upkeep. He paid the installments of the mortgage indebtedness as they matured, except in one year when these installments were paid by the son of Laura Randolph, under an arrangement whereby Frank Randolph had leased the lands to him. He operated a part of the place and leased a part of the place. He bought two farm tractors, one in 1937 for $1200, and one in 1939 for $1500, for use on the farm. Although he paid the taxes, the lands embraced in the deed were assessed to Laura Randolph, the assessment, however, separate from the assessments of her own real estate.

There were tendencies of the evidence which showed that Laura Randolph, when she drove Frank Randolph from her home, did so under provocation, and there were tendencies of the evidence which showed that the deed was executed and delivered voluntarily and without condition of any kind.

On this phase of the case, an issue of fact was presented, which the trial court resolved in favor of the complainant. The witnesses testified orally before the court. We cannot say that the finding of the lower court was palpably wrong and so we follow the established rule that the judgment of a lower court will not be disturbed. Puckett v. Puckett, 240 Ala. 607, 200 So. 420; Bonds v. Bonds, 234 Ala. 522, 175 So. 561; Murphy v. May, 243 Ala. 94, 8 So.2d 442.

The decree of the lower court is affirmed.

Affirmed.

GARDNER, C. J., and THOMAS, BROWN, FOSTER, and LIVINGSTON, JJ., concur.