101 So.2d 78

**NELSON REALTY CO., Inc., et al.**

v.

**DARLING SHOP OF BIRMINGHAM, Inc.**

6 Div. 84.

Supreme Court of Alabama.

Oct. 24, 1957.

Rehearing Denied March 6, 1958.

Earl McBee and John S. Tucker, Jr., Birmingham, for appellants.

Cabaniss & Johnston, K. E. Cooper and Meade Whitaker, Birmingham, for appellees.

SIMPSON, Justice.

This is an appeal by Nelson Realty Co. from a decree of the lower court sustaining a demurrer to the substitute cross-bill of Nelson, the appellant.

The original bill was filed by Darling Shop of Birmingham, the appellee, seeking a declaratory judgment to clarify a lease existing between Darling and Nelson. Nelson, in turn, initially filed an answer and cross-bill which sought to defeat a renewal of the lease and to require Darling to

vacate the premises. There were several amendments to the original pleadings and two previous appeals. For a better understanding of the case, see 255 Ala. 586, 52 So.2d 211 and 262 Ala. 495, 79 So.2d 793.

A substitute answer and cross-bill was filed on November 21, 1955, after the first appeal, and amended August 29, 1956, after the second appeal and the consent of Prudential Insurance Company (mortgagee of the property), who had been assigned the rents therefrom, had been obtained.

It is the contention of the appellant on this appeal that the lower court was in error in sustaining the demurrer to the cross-bill as amended for the following reasons: that there is a sufficient allegation which would warrant an accounting between the parties; that a sufficient ground for the rescission of the lease is stated viz.: fraud in the procurement of the lease contract; and that in the event that a rescission of the contract is not warranted, then he is entitled to a specific performance of those promises fraudulently made by Darling for the remodeling and merchandizing of the building. We limit discussion to these propositions.

The following facts are apparent from the pleadings: Nelson interposed the original cross-bill grounded on the claim that Darling had not met the necessary conditions to effectuate a renewal of the existing lease between the parties. This ground was held insufficient by the lower court and by this court on the first appeal. 255 Ala. 586, 52 So.2d 211. After amending the cross-bill (by the substitute cross-bill), it was again brought up on appeal and this court then held that it would be necessary for Nelson to obtain the consent of Prudential, to whom the proceeds of the lease had been assigned, before the cross-bill could be maintained. 262 Ala. 495, 79 So.2d 793. After the case was remanded, Nelson obtained such consent from Prudential, amended his substitute cross-bill showing such consent, and now contends that he has the right to challenge the validity of the lease on the ground of fraud in its procurement.

The salient facts of the alleged fraud are: Nelson avers that while he was negotiating with Darling for the leasing of the property, as a material inducement for the giving of the lease by Nelson, Darling promised and agreed that they would remodel the building as soon as war shortages of building materials were relieved so as to increase the sales and therefore, increase the productivity of the premises. It is further alleged by Nelson that when the formal lease was executed, because of the shortages of materials, instead of binding Darling to this unconditional promise to remodel, the lease contained a provision that "the tenant may at any time make any and all repairs, alterations or improvements upon said premises as it may deem necessary * * *". Nelson avers that at the time the promise to remodel when materials could be available was made, although he (Nelson) relied on such promise and executed the lease, Darling had no intention of keeping it and that the fraud so committed in making such a promise to induce him to execute the lease entitles him to a rescission thereof.

The trial court, in sustaining the demurrer, made no reference to any specific grounds on which the ruling was rested. Therefore, only those grounds going to the sufficiency of the bill as a whole will be considered. Rowe v. Rowe, 256 Ala. 491, 55 So.2d 749; Shaddix v. Wilson, 251 Ala. 191, 73 So.2d 751; Penton v. Brown-Crummer Inv. Co., 222 Ala. 155, 131 So. 14; Rikard v. O'Reilly, 232 Ala. 667, 169 So. 320.

Since a demurrer to a bill as a whole should be overruled if any one of the bill's aspects presents a case for equitable relief (8 Ala.Dig., Equity, ☞ 232, p. 529) and a bill is not defective even though it ask for alternative relief (Stamey v. Fortner, 230 Ala. 204, 160 So. 116) the sole consideration on this appeal is to determine if the substituted cross-bill of Nelson pre-

sents a case for equitable relief in any aspect.

No question of the consent of Prudential enters into the determination of this appeal. Prudential has given its consent to the maintenance of the suit so that obstruction to the claim of Nelson mentioned on the last appeal (262 Ala. 495, 79 So.2d 793) has been removed.

■ We are mindful of the oft stated rule that for an allegation of fraud to be sufficient, it must aver facts disclosing in what the fraud consists, so as to advise respondent what he is called upon to defend against. Williams v. Williams, 238 Ala. 637, 193 So. 167; Doswell v. Hughen, Ala., 94 So.2d 377.[1] General averments of fraud which are in effect conclusions of the pleader, will not suffice as against proper demurrer. Williams v. Williams, supra.

■ The principle of law here controlling and firmly settled in this jurisdiction is that a promise made with the intention in the mind of the promisor not to perform, may be a misrepresentation of a subsisting fact, and if material and relied upon as an inducement to the contract, is a fraud entitling the promisee to a rescission or cancellation. Williams v. Williams, supra.

■ While a failure to fulfill a mere promise alone will not give rise to actionable fraud, yet if with an intent to deceive, a promise is made with no intention of fulfillment at the time such promise was made and relied upon, and injury to the defrauded party results therefrom, fraud may be predicated thereon. Cross v. Maxwell, 263 Ala. 509, 83 So.2d 211 and authorities cited therein; Doswell v. Hughen, supra.

It is the contention of the appellee that such an antecedent verbal promise intentionally omitted from the written contract entered into between the parties is not subject to enforcement either directly or indirectly. In support of this contention, the appellee cites several cases, i.e., Betts v.

Gunn, 31 Ala. 219; Folmar v. Lehman-Durr Co., 147 Ala. 472, 41 So. 750; Goulding Fertilizer Co. v. Blanchard, 178 Ala. 298, 59 So. 485; Ballentine v. Bradley, 236 Ala. 326, 182 So. 399; Harper v. Kansas City Life Ins. Co., 240 Ala. 472, 199 So. 699; Bankhead v. Jackson, 257 Ala. 131, 57 So.2d 609; and Holmes v. Riley, 240 Ala. 96, 196 So. 888. However, the court in the consideration of the above cases was not concerned with fraud which entered into the inducement of the contract.

■■ Nor does a written contract estop the parties from showing fraud in the inducement if seasonable action is taken. Stanard Tilton Milling Co. v. Mixon, 243 Ala. 309, 9 So.2d 911; Alabama Machinery & Supply Co. v. Caffey, 213 Ala. 260(3), 104 So. 509; J. A. Fay & Egan Co. v. Independent Lumber Co., 178 Ala. 166, 59 So. 470. "The law does not countenance a contract against the consequences of fraud." Alabama Machinery & Supply Co. v. Caffey, supra, 213 Ala. 262, 104 So. 511. If the promises made were tainted with fraud, and there was a fraudulent intent in obtaining the lease, without intention of performance and pursuant to it, the promises were not fulfilled, the statute of frauds becomes immaterial. Doswell v. Hughen, supra. The action in such cases is based upon the fraud in the procurement of the contract, and not upon the contract itself. Pierce v. Wilson, 34 Ala. 596.

■ Estoppel is argued on the part of the appellee in bar of the claim of the appellant in that allegedly appellant did not act seasonably after discovery. However, to take advantage of estoppel, it must be availed of by special plea (Jones & Co. v. Peebles, 130 Ala. 269, 30 So. 564; Cloverland Apartments, Inc., v. Ansley, 265 Ala. 380, 91 So.2d 470) alleging facts upon which the estoppel is predicated. Jones & Co. v. Peebles, supra; Gulf Red Cedar Co. v. Crenshaw, 169 Ala. 606, 53 So. 812. An exception to this rule is where facts necessary or sufficient to establish

1. 266 Ala. 87.

the estoppel affirmatively appear from the face of the bill, in which case it may be taken advantage of by demurrers. J. M. Card Lumber Co. v. Ozement, 187 Ala. 237, 65 So. 792. Here, however, according to our interpretation, we do not think sufficient facts are apparent from the face of the cross-bill to show that this defense is available to defeat Nelson's claim.

The rule is that upon the discovery of the fraud, the party must act with promptness. An express affirmance of the contract by word or act *after the discovery of the fraud* defeats the right of rescission. Stafford v. Colonial Mortgage & Bond Co., 221 Ala. 636, 130 So. 383; Kyser v. Southern Building & Loan Ass'n, 224 Ala. 673, 141 So. 648. What is seasonable action depends upon the facts in each particular case. Stafford v. Colonial Mortgage & Bond Co., supra. There can be no estoppel without knowledge or means of knowledge of all material facts. American National Bank & Trust Co. v. Powell, 235 Ala. 236, 178 So. 21. The common sense of the rule is that a person cannot be estopped from asserting a fact of which he was ignorant, and which, when he became acquainted with the situation, commenced his remedial action with promptness. We interpret the cross-bill as governed by this last stated principle.

The appellee contends that from the acts of accepting the rent and paying off one and part of another mortgage the appellant is estopped from seeking a cancellation of the lease on the ground of fraud. However, at an early stage of the proceedings the court ordered that the rent be paid without prejudice to the rights of the parties, thus maintaining the status quo during the pendency of the action.

In this connection, the appellee states in his brief that a statement of specific grounds of forfeiture of the right of renewal of a lease is a waiver of other grounds not stated. However, a person must have knowledge or means of knowledge before he is deemed to have waived his right. Authorities, supra.

Several specific instruments and acts of the appellant are urged by the appellee as establishing the fact that the appellant is estopped from asserting the alleged fraud. But, on this appeal, only those matters contained in pleadings can be considered. 2A Ala. Dig., Appeal & Error, ☞837(4), p. 137.

Immanent in a consideration of the foregoing principles are certain recognized rules respecting the use of parol evidence to show that the real contract was different from that signed by the parties. We will advert to some general authorities on the subject.

3 Thompson on Real Property, § 1194, p. 262, states the rule as follows:

"A party or privy to a lease may introduce extrinsic evidence to show fraud when the writing fails to express the actual agreement of the parties. The rule that fraud in the making of a written agreement may be shown by parol evidence to change its legal effect is too well established to need any citation of authorities to sustain it. The evidence, however, must be clear, precise, and indubitable. The party alleging that the lease was procured by fraud must establish such fact by strong and convincing evidence."

McCormick on Evidence, § 221, p. 449, thus states the rule:

" * * * [I]t is settled that the Parol Evidence Rule does not apply to evidence of agreements and expressions of the parties outside the instrument, whether contract, deed, release, or other writing, when such evidence is offered to show that the writing was * * * vitiated by fraud * * *."

Dean Wigmore in his work on evidence states that parol evidence should be ad-

missible to establish the fraud on the ground that "the vital additional element in fraud is the party's state of mind, which neither can be nor is intended to be embodied in the written document * * *." 9 Wigmore, Evidence, § 2439, p. 125. Wigmore limits his definition of fraud to the misrepresentation of a past or present fact which of course is sound law and obtains in our jurisprudence. And our court holds that a promise made with the intention in the mind of the promisor not to perform, may be a misrepresentation of a present fact, and if material and relied upon as an inducement to the contract, is a fraud. Williams v. Williams, 238 Ala. 637, 193 So. 167, and cases cited.

 3 Corbin on Contracts, § 580, p. 257, states that parol evidence is admissible to prove fraud without regard to whether the contract is void or voidable. Also that parol evidence is admissible even though it contradicts the terms "of a complete integration in writing".

In a proceeding by a landlord to recover leased premises the Appellate Division of the New York Supreme Court held that parol evidence was admissible to show that a lease which provided that the premises would be used for professional purposes was, in fact, a subterfuge by which the premises were actually to be used and were being used for residential purposes. In short, that court held parol evidence admissible to show an agreement other than that contained in the lease. 97 Fifth Ave. Corp. v. Schatzberg, 283 App.Div. 407, 128 N.Y.S.2d 264.

Several Alabama cases have dealt with the admission of parol evidence in establishing fraud in the procurement of contracts. The early case of Kennedy's Heirs & Executors v. Kennedy's Heirs, 2 Ala. 571, seems to somewhat parallel the controversy here. The pertinent facts there were: the testator transferred his property to his brother; later it was the contention of the children of the testator that even though the deed contained a recitation of valuable consideration, none was in

fact paid; the heirs of the testator are attempting to reclaim the property from the heirs of the brother on the ground of fraud in the procurement of the deed. This court stated at page 588:

"Where parties have entered into a contract in writing, in the absence of fraud, the law intends, that the writing contains the entire agreement, and consequently, will exclude all parol evidence tending to show that there were other terms not embraced. * * * If, therefore, a party would show, that the contract contains other terms than the writing indicates, it is incumbent on him to lay a foundation for the introduction of such proof. * * * But neither the common law, which accords to writings a higher dignity in the scale of evidence, than mere oral statements, nor the statute of frauds and perjuries, inhibit the admission of parol evidence to vary, or totally defeat, a written contract tainted with fraud."

For other Alabama cases involving other types of transactions permitting parol evidence to show fraud, see Dixon v. Barclay, 22 Ala. 370; Nelson v. Wood, 62 Ala. 175; Pierce v. Wilson, supra; Brenard Mfg. Co. v. Jacobs & Padgett, 202 Ala. 7, 79 So. 305.

 Using the foregoing authorities as our guide and others which, perhaps, could be cited, we think it would be entirely permissible for the appellant to show that what was incorporated into the contract was not the true agreement but was placed there through fraud of appellee which induced its execution.

 Appellee argues the point that appellant does not come "with clean hands" because it was fraudulent conduct on the part of the appellant to represent to Prudential that the lease contained the entire agreement between the parties, when in fact, the alleged promises were outside of and not incorporated in the lease agreement. However, the only interest Prudential had

in the agreement was as to the stipulated amount it was to receive annually on the payment of the loan to the appellant, secured by the mortgage held by it. As long as the lease contained a guaranty for the payment of this sum, ancillary agreements not affecting that payment were immaterial so far as Prudential was concerned. The only effect the promise could have had upon the relation of the parties would have been according to the allegations of the cross-bill, to increase the income the appellant would have received from the venture. It could have in no wise affected Prudential's rights, except the right to the rentals and Prudential has consented to the suit.

There was no duty as argued by the appellee for appellant to notify appellee and request performance of the alleged false promises before a rescission of the contract may be attempted. True, where there is a contract involving mutual continuing duties on the part of both parties, and one party has breached, but has not repudiated, the contract, it is the duty of the other before rescission to give notice and opportunity to live up to the contract, but this rule does not apply where fraud in the procurement of a contract is alleged. Stafford v. Colonial Mortgage & Bond Co., supra.

The appellee attempts to defeat the claim of the cross-bill on the ground that the parties cannot be placed in status quo. The applicable rule was stated in Stanard Tilton Milling Co. v. Mixon, 243 Ala. 309, 311, 9 So.2d 911, 913, as follows:

"While generally a party rescinding a contract for fraud is under a duty to restore the benefits received under the contract before he can rescind, he does not have to do so where the consideration received is without value, or where it is impossible, impractical, or futile to restore the consideration. King v. Livingston Mfg. Co., 192 Ala. 269, 68 So. 897; Consumers' Coal & Fuel Co. v. Yarbrough, 194 Ala. 482, 69 So. 897; Stone v. Walker, 201 Ala. 130, 77 So. 554, L.R.A.1918C, 839."

The appellee also claims that the filing of the amended substitute cross-bill was a different cause of action and did not therefore, relate back to the filing of the original bill, and since it was a new cause of action it would be barred by the one year statute of limitation relating to fraud. Without otherwise considering the merit of this contention it is enough to say that the one year statute of limitation applicable to suits based on fraud is not here controlling. This suit is in essence one to recover land and is governed by the ten year statute. Title 7, § 20, Code of 1940. Glass v. Cook, 257 Ala. 141, 57 So.2d 505.

Appellee urges laches as a defense (South v. Pinion, 207 Ala. 122, 92 So. 420) but no ground of demurrer raises the point. Questions not raised by demurrer and not considered by the trial court will not be considered on appeal. Hays v. McCarty, 239 Ala. 400, 195 So. 241.

Some further observations seem necessary in view of argument of counsel. Aside from the consideration of fraud, the appellant contends the demurrer of the appellee was due to be overruled because an equitable ground for an accounting was sufficiently stated. His argument is that there exists a fiduciary relationship between a landlord and his tenant. The relationship of landlord and tenant in itself, is not confidential or of a fiduciary nature. 3 Thompson on Real Property, § 1060, p. 70. As was stated in 51 C.J.S. Landlord and Tenant § 2, p. 510: "The incidents of the relation of landlord and tenant, such as obligations and duties of the parties, rest on established principles of law and on the terms and conditions of the contract creating the relationship. The relation is one which exists between two independent contracting parties, and does not involve any idea of representation or agency. The relation, without more, is not confidential or fiduciary in character, although it may become such under peculiar and unusual facts and circumstances, or under provisions in the lease imposing special duties and obligations."

But equity may obtain jurisdiction where there is a complication of accounts, or it is shown that a discovery is necessary. Hall v. McKeller, 155 Ala. 508, 46 So. 460. Also, an accounting may always be had in a court of equity, where it is incident to some other relief. Kelly v. Wollner, 201 Ala. 445, 78 So. 823; Garontakis v. Sparks, 222 Ala. 421, 132 So. 896. A court of equity reserves to itself a large amount of discretion in regard to accounting and will take or refuse jurisdiction according to the circumstances of the particular case. Ex parte Deaton, 243 Ala. 154, 8 So.2d 819. Therefore, since an accounting will be necessary to adjudicate the rights of the parties in this case, and it is here sought in connection with other equitable relief, equity may retain jurisdiction and determine this question, too.

In the alternative, the cross-complainant asks that the promises made by Darling be specifically enforced by the court. There are two types of relief which may be granted when a suit is based upon fraud. One is a rescission or cancellation of the instrument which was the result of the alleged fraudulent promise. The other remedy and the one plead alternatively by the appellant, is specific enforcement by which the fraudulent party is compelled to perform the very specific obligation which rests upon him, and the defrauded party obtains that which was promised him at the inception of the contract, but of which he was deprived because of fraud. 3 Pomeroy's Equity Jurisprudence, 5th Ed., § 910, p. 576. This alternative averment therefore contains equity. Whether or not specific performance should be ordered will address itself to the sound discretion of the trial court on final hearing after considering the evidence and the exigencies of the case.

Even though the three aspects of the appellant's cross-bill are interrelated, the cross-bill states sufficient facts to give it equity to the end that the parties may proceed to trial and have the matter adjudicated.

From the foregoing considerations it results as our view that the demurrer to the substitute cross-bill was incorrectly sustained.

Reversed and remanded.

LIVINGSTON, C. J., and GOODWYN and COLEMAN, JJ., concur.

On Rehearing

SIMPSON, Justice.

The necessity of responding to the application for rehearing is doubted, since we treated every matter germane to this appeal on original deliverance. Nevertheless, in deference to the earnest argument of counsel, we will make a brief response.

It has already been pointed out that estoppel is out of consideration since, from the allegations of the substitute cross-bill, this defense must be availed of by special plea, and this appeal is from a decree only sustaining the demurrer going to the cross-bill as a whole.

Neither would it be proper to treat of those grounds of demurrer alleging laches, since such grounds were addressed to a certain aspect of the cross-bill, and as stated, the decree appealed from was one sustaining the demurrer to the cross-bill as a whole.

Hence, to discuss either of the foregoing mentioned defenses would at most be dictum, which the Court is not inclined to indulge in.

Finally, it is argued that the case of Steiner Bros. v. Slifkin, 237 Ala. 226, 186 So. 156, sustains the contention of the appellee that the fraud alleged and discussed in our original opinion is not pleadable in that it seeks to vary the terms of the written contract. That case is distinguishable from the instant one because, inter alia, the plea there held to be subject to demurrer was interposed in an action at law.

The case at bar is in equity. The oft-cited case of Kennedy's Heirs and Executors v. Kennedy's Heirs, 2 Ala. 571, 592, points up some of the distinctions:

"* * * The fraud that avoids a specialty at law, must relate to the execution of the instrument. * * * A defendant may give evidence tending to show, that the deed was mis-read, read but in part, or mis-expounded to him, or that one instrument was substituted for another, and thus his signature was fraudulently obtained,—this is what is meant by 'fraud in the execution'. * * * But the jurisdiction of Chancery is much more extensive. Courts of equity administer remedies for rights, in cases, in which Courts of law recognize no rights at all; or if recognized, they are left to the conscience of the parties. * * * There are cases of losses and injuries by mistake, accident and frauds, as well as undue advantages and impositions, betrayals of confidence and unconscionable bargains; in all which, Courts of equity will interfere and grant redress; but of which the common law takes no notice, or silently disregards.

* * * * * *

" 'It may be correctly said, that the maxim, that equity follows the law, is a maxim liable to many exceptions; and that it cannot be generally affirmed, that where there is no remedy at law in the given case, there is none in equity; or, on the other hand, that equity in the administration of its own principles, is utterly regardless of the law. * * *

" 'Fraud is defined by the civilians to be any artifice or deception used to cheat, or deceive. This definition would however seem to embrace only actual or positive frauds. But fraud, as understood and denounced in equity, includes all acts, omissions, or concealments which involve a breach of a legal or equitable duty, trust or confidence justly reposed, which are injurious to another, or by which an undue or unconscientious advantage is taken of another. And Courts of equity will not only interfere in cases of fraud, to set aside acts done; but will also if by fraud, acts have been prevented from being done by the parties, interfere and treat the case precisely as if the acts had been done. * * * ' "

See also J. A. Fay & Egan Co. v. Independent Lumber Co., 178 Ala. 166, 59 So. 470; Randolph v. Randolph, 245 Ala. 689, 18 So.2d 555; Fuller v. Scarborough, 239 Ala. 681, 196 So. 875; Seeberg v. Norville, 204 Ala. 20, 85 So. 505; and Morgan v. Gaiter, 202 Ala. 492, 80 So. 876.

Opinion extended and application overruled.

LIVINGSTON, C. J., and GOODWYN and COLEMAN, JJ., concur.