ALMON, Justice.
Z.D. Overstreet and Ruby Overstreet sued John L. Harlan and Overstreet, Inc., on a contract, on a note, and for fraud. Harlan counterclaimed for fraud. The jury awarded Mr. Overstreet $56,801.17 against Overstreet, Inc., “on the breach of contract claim,” and $0.00 (zero) against Harlan on the contract claim. On the fraud claims, the jury returned a verdict stating: “we find in favor of Z.D. Overstreet (plaintiff) John Harlan (defendant) and (if in favor of plaintiff) assess damages at 0 dollars.” The underscored portions were blanks filled in by the jury. The Overstreets argue that the verdicts were inconsistent, that the jury failed to follow the instructions given by the court, and that the verdicts were not supported by the evidence.[1]
In January 1984 the Overstreets helped their son start Overstreet, Inc., as a mobile home sales business. Overstreet, Inc., borrowed $65,750 from Union Bank and Trust Company, with Z.D. Overstreet executing the note as president. The Overstreets guaranteed payment on the note and, as security for the note, Mr. and Mrs. Over-street[2] mortgaged the property they owned on which the mobile home sales lot was to be located. For this financial backing, Z.D. Overstreet received 75% of the stock of Overstreet, Inc.
On August 17,1984, Z.D. Overstreet sold his interest in Overstreet, Inc., to Harlan, executing with Harlan an agreement with the following pertinent provisions:
“Harlan, upon the execution of this agreement, will from this date until March 1, 1985, agree to hold Overstreet harmless from any claims of any kind which may occur because of a default by the corporation in its payments to Union Bank & Trust Co. of that debt of the corporation in the sum of $61,830.18_ Harlan does further agree that it has been represented to him that the land of Overstreet has been pledged as collateral for this loan and that Overstreet, Inc., will cause all of the indebtedness to Union Bank & Trust Co. to be paid in full by March 10, 1985.
[[Image here]]
“Harlan is this date signing a note to Overstreet in the amount of Thirty Five Thousand Dollars ($35,000.00), said note being an option to purchase the property on which the mobile home business of Overstreet, Inc., is situated; said option being in the total amount of $102,000.00 and is to be exercised on or before March 10, 1985. In the event Harlan exercises his option to purchase the land, the note will be cancelled and a mortgage and note given to Z.D. Overstreet in the amount of $102,000.00, payable over a period of twelve (12) years....
[[Image here]]
“Overstreet and Harlan both agree that this agreement has been made and entered into based upon representations made by Overstreet as to the financial condition of the corporation, Overstreet, Inc., ... and that all of said representations by Overstreet to Harlan to induce him to purchase this stock will remain and survive the execution of this agreement.”
Overstreet, Inc., defaulted on the note and Harlan refused to pay the balance due, whereupon the Overstreets paid $58,941.32 to satisfy the indebtedness. The instant suit sought recovery of that sum for breach of the above-quoted agreement; of the $35,000 due on the promissory note; and of damages for Harlan’s alleged fraud in promising to pay the above sums with no intention of doing so. Harlan counterclaimed for Z.D. Overstreet’s alleged fraud in misrepresenting the financial condition of Overstreet, Inc., and defended on the contract on the ground of fraud in the inducement.
Z.D. Overstreet argues that the verdicts were inconsistent because the jury *771 found that both parties had committed fraud but awarded no damages. He quotes Stinson v. Acme Propane Gas Co., 391 So.2d 659, 661 (Ala.1980):
“The jury’s finding for each of the Plaintiffs, which is clear and unequivocal, necessarily embraced all of the elements of the tort claim, including the element of injury and resultant damages. To so find, and then award no damages, is inconsistent on its face as a matter of law.”
He also cites Ward v. Diebold, Inc., 486 So.2d 1261 (Ala.1986), and Lewis v. Moss, 347 So.2d 91 (Ala.1977). In neither of the cases cited, however, was there a counterclaim by virtue of which an award of zero damages could be explained on the basis of offsetting damages. There can be situations where the counterclaimant’s claim for relief is equal to or exceeds the plaintiff’s; in such a case, the award of zero damages to the plaintiff is not improper. See 80 C.J.S. Set-Off and Counterclaim § 58 (1953).
When the jury returned its verdict, the court asked for an explanation, whereupon the foreman responded: “We find both were guilty of fraud but don’t think it was intentional so we didn’t award them any damages.” Thus, the jury implicitly found that Overstreet induced Harlan to purchase Overstreet, Inc., by misrepresenting its financial condition.
The finding against Harlan could only mean that he promised to pay the sums due under the contract without intending to pay them, but this portion of the verdict is inconsistent with the foreman’s statement that the frauds were not intentional, because a promise to do an act in the future can be fraud only if there is a present intent not to perform. Army Aviation Center Federal Credit Union v. Poston, 460 So.2d 139 (Ala.1984); Shiloh Construction Co. v. Mercury Construction Corp., 392 So.2d 809 (Ala.1980). Harlan does not complain of this apparent inconsistency in the portion of the verdict returned against him. Even aside from the question of offsetting damages, the jury’s decision not to award Overstreet damages on the basis of this inappropriate finding that Harlan committed unintentional fraud could scarcely serve as a basis for reversal of the trial court’s denial of the motion for new trial.
Z.D. Overstreet next argues that the jury failed to follow the trial court’s instructions when it failed to award any money on the promissory note. He insists that the liability on the note was separate and apart from any obligations under the contract. The very terms of the contract quoted above, however, show that the option to purchase the land arose pursuant to the contract. Thus, a finding that Harlan was fraudulently induced to enter into the contract necessarily allowed Harlan to avoid liability on the note as well as on the contract. See Parker v. McGaha, 294 Ala. 702, 321 So.2d 182 (1975); Nelson Realty Co. v. Darling Shop of Birmingham, Inc., 267 Ala. 301, 101 So.2d 78 (1957).
The argument that there was a lack of evidence to support the verdict is also premised on the assertion that the liability on the note was separate and apart from any obligation under the contract, and so presents no ground for reversal, either.
AFFIRMED.
MADDOX, BEATTY and HOUSTON, JJ., concur.
TORBERT, C.J., concurs in the result.

. The notice of appeal names Overstreet, Inc., as an appellee, but there is actually no issue raised with respect to the judgment against Overstreet, Inc.

. Mrs. Overstreet claimed damages for the fact that the Overstreets were forced to pay the note and for Harlan’s alleged fraud. The trial court directed a verdict against Mrs. Overstreet on the fraud claim. Because Z.D. Overstreet is the only plaintiff on the claims made the subject of this appeal, we shall refer to him as the sole appellant.